IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| APRIL R. NAIL;<br>JORDIN BALLARD;<br>RICHARD BOYETT;<br>MARK L. HOPPER<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT M. SHIPP;<br>REGINA E. SHIPP;<br>SPORTSMAN FISH HOUSE, LLC<br>d/b/a SHIPP'S HARBOUR GRILL<br><br>Defendants. | CASE NUMBER: 1:17-CV-195 |

## COLLECTIVE ACTION COMPLAINT

Named Plaintiffs April R. Nail ("Plaintiff Nail"), Jordin Ballard ("Plaintiff Ballard"), Richard Boyett ("Plaintiff Boyett"), and Mark L. Hopper ("Plaintiff Hopper") (hereinafter in the aggregate "Named Plaintiffs" or "Plaintiffs") file this Complaint against the Defendants, on behalf of themselves and all other similarly situated employees pursuant to Section 216(b) of the Fair Labor Standards Act and for their cause of action state as follows:

### I.  **Introduction**

1. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, et. seq., and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provision of the FLSA by Defendants, which have deprived Named Plaintiffs and all other similarly situated servers employed by Defendants of their lawful wages.

1

2. This action is brought to recover unpaid compensation, in the form of unpaid minimum wages and overtime wages, owed to Named Plaintiffs, and all other similarly situated servers employed by Defendants, pursuant to the FLSA.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Venue is proper in the Southern District of Alabama, pursuant to 28 U.S.C. §1391(b).

4. Defendants are subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

5. Each of the Named Plaintiffs herein worked hours while employed by Defendants for which they either received no compensation, for which they were improperly paid at rates less than one-and-one half times their normal hourly rates, and/or for which they were paid below the minimum wage.

6. Defendants' actions, as set forth more fully below, in failing to compensate the Named Plaintiffs, as well as those similarly situated, in accordance with the provisions of the FLSA were willful.

7. Defendants Robert Shipp and Regina Shipp are the owners of Defendant Sportsman Fish House, LLC d/b/a Shipp's Harbour Grill (hereinafter referred to in the aggregate as "Defendants" or "Shipp's"), which is an enterprise that operates a seafood restaurant in Alabama.

8. Defendant Robert M. Shipp exercises management control over the operation of Shipp's Harbour Grill, including employment policies and practices.

9. Defendant Regina E. Shipp exercises management control over the operation of Shipp's Harbour Grill, including employment policies and practices.

10. Defendants are doing business as "Shipp's Harbour Grill" located at 27842 Canal Road, Orange Beach, Alabama 36561.

11. Named Plaintiff April R. Nail resides in Orange Beach, Alabama. From approximately February 2015 through February 2016, she was employed by Defendants as a server.

12. Named Plaintiff Jordin Ballard resides in Orange Beach, Alabama. From approximately June 2015 through February 2016, she was employed by Defendants as a server.

13. Named Plaintiff Richard Boyett resides in Gautier, Mississippi. From approximately September 2014 through September 2016, he was employed by Defendants as a server.

14. Named Plaintiff Mark L. Hopper resides in Foley, Alabama. From approximately October 2011 through March 2017, he was employed by Defendants as a server.

15. Named Plaintiffs have consented in writing to be a party to the FLSA claims in this action pursuant to 29 U.S.C. §216(b). Attached as Exhibit A are the consent to sue forms signed by the Named Plaintiffs.

## II. Factual Background

16. For up to three years prior to the filing of this complaint, Defendants have had a uniform policy and practice of claiming an improper tip credit, failing to capture and pay for all hours worked by servers, failing to reimburse for tools of the trade used or required by Defendants in violation of Defendants' minimum wage and overtime compensation obligations under the FLSA.

17. Defendants paid Plaintiffs, and all other similarly situated servers, an hourly wage less than the federally mandated $7.25 per hour.

18. Defendants claimed a tip credit for all hours they paid to Plaintiffs, and all other similarly situated servers, up to $5.12 per hour.

19. Defendants claimed an improper tip credit for Plaintiffs, and all other similarly situated servers, for time spent in excess of twenty percent of their shift performing non-tip generating work, including food and beverage preparation as well as janitorial work.

20. Defendants required the Named Plaintiffs and all other similarly situated employees to purchase and maintain uniforms, including custom-shirts, and aprons, in violation of the FLSA.

21. Defendants required its servers to maintain their uniforms by laundering and ironing them prior to reporting for work.

22. Defendants did not reimburse their servers for the costs of their purchasing or maintaining their uniforms and did not pay their servers any wages for the time required to launder and iron their uniforms.

23. Defendants also required the Named Plaintiffs and all other similarly situated employees to purchase tools of the trade including wine keys, pens, paper, and lighters. Defendants neither provided the required tools to their servers nor reimbursed their servers for these tools of the trade.

24. The costs associated with purchasing and maintaining uniforms and purchasing tools of the trade reduced each server's wages below the statutory minimum in each in which any costs were incurred. These costs violate the minimum wage and tip credit provisions of the FLSA and for each workweek in which the Named Plaintiffs or any similarly situated employees incurred any costs related to uniforms or tools of the trade, Defendants owe their servers the difference between the cash wage paid and the minimum wage plus reimbursement of the costs incurred by servers related to uniforms and tools of the trade.

25. At times during the relevant liability period, Defendants' payroll practices paid employees less than the actual time spent performing compensable activity and being engaged to

wait, in avoidance of the employers' obligations to pay for all hours worked, either at regular rate for hours up to forty or at the proper overtime compensation for hours over forty worked in a week.

26. For up to three years prior to filing this complaint, Defendants have had a uniform policy and practice of requiring Named Plaintiffs and similarly situated servers to contribute a portion of cash gratuities left by customers, to employees who did not customarily receive tips independent of their participation in a tip sharing scheme.

27. Named Plaintiffs and all other similarly situated servers were required to tip out employees categorized as food runner, but employed as food expeditors (hereinafter "Food Expos.")

28. Named Plaintiffs and similarly situated servers were required to tip out employees categorized as bussers, but employed as dishwashers (hereinafter "Dishwashers.")

29. Defendants called the Food Expos "Food Runners" and required them to wear shirts labelled "Crew," and explicitly prohibited and limited them from engaging with the customers. Defendants primarily engaged them to retrieving food dishes from the kitchen window, preparing the tray for transport, and communicating with kitchen members and servers to ensure food moved out of the kitchen area.

30. Servers were responsible for delivering the plates to the customers, and generally transported their own trays from the kitchen area to the dining area.

31. Any interaction Foods Expos had with customers was incidental, and generally limited to transporting and setting up a tray in vicinity to the table or server's area.

32. Food Expos did not regularly receive $30.00 in tips each month directly from customers.

33. Food Expos do not customarily receive $30.00 in tips each month directly from customers.

34. Defendants called the Dishwashers "Bussers" and required them to wear shirts labelled "Crew." Defendants primarily engaged them to scrap, rinse, and place dishes in dishwasher.

35. Servers generally bussed their own tables, with the occasional assistance of a floating busser, who would transport the dirty dishes and dining utensils to the kitchen area for scrapping or hand to the dishwasher.

36. Any interaction bussers had with customers was incidental, and generally limited to being seen at other vacant tables.

37. Dishwashers were not seen by customers as they performed work in the kitchen, an area restricted to the public.

38. Dishwashers did not regularly receive $30.00 in tips each month directly from customers.

39. Dishwashers did not customarily receive $30.00 in tips each month directly from customers.

40. Defendants did not have dishwashers and bussers on each shift, and during those shifts, Named Plaintiffs and similarly situated servers performed those functions.

41. Plaintiffs and similarly situated servers were required to arrive at the restaurant and perform certain duties before they began serving customers.

42. Plaintiffs and similarly situated servers assigned to the day shift were required to arrive before the doors opened to the public.

43. Plaintiffs and similarly situated servers were expected to perform work for at least an hour before the doors opened including, but not limited to, the following:

A. Retrieving, transporting, and preparing and apportioning beverages, food, utensils and ingredients, such as lemons, sweet and unsweet tea, cocktail sauce, tarter sauce, salad dressings, cinnamon butter, cabbage bowls, and ketchup;

B. Retrieving, transporting, and gathering cleaning tools and solutions;

C. Cleaning bathrooms, including wiping mirrors, cleaning toilets, sweeping floors, and mopping floors;

D. Cleaning kitchen areas, rolling up floor mats, sweeping floors, and mopping floors;

E. Cleaning and setting up outdoor seating areas, including wiping down chairs, tables, and sweeping the deck;

F. Cleaning and setting up indoor seating areas, including wiping down chairs, tables, sweeping, and mopping;

G. Checking and refilling tabletop condiments such as salt and pepper shakers and sugar packets;

H. Inspecting and folding napkins;

I. Inspecting, cleaning, polishing, and rolling silverware;

J. Setting-up and organizing server stations and drink stations;

K. Retrieving and stocking to-go cups and food boxes;

L. Retrieving and stocking glasses, dishes, and silverware;

44. Named Plaintiffs and all other similarly situated servers continued performing duties, including but not limited to those identified in the preceding paragraph, until customers were seated in their section.

7

45. Defendants did not directly pay Plaintiffs the federally mandated minimum wage for time spent during these activities; rather, Defendants claimed a tip credit for all time spent before they served seated customers.

46. Defendants did not track the time spent performing these pre-customer activities though it was administratively possible.

47. Defendants engaged Plaintiffs and all other similarly situated servers to wait or required them to perform other duties when not having any customers seated in their sections.

48. Defendants did not track Plaintiffs' and similarly situated servers' time without customers to serve.

49. Between the day shift and evening shift servers were engaged to wait or required to perform other duties until there was a customer seated in their section.

50. Defendants required servers to inspect, scrape, clean, set to wash, and transport a sufficient supply of dishes from an area known as the "dish pit" removed from the public dining area, in the kitchen, to be stacked for inspection before the servers were released for a break.

51. Defendants automatically deducted an unpaid 1 hour break between shifts, but did not track whether or not Plaintiffs and similarly situated servers actually received the full benefit of that hour break. Named Plaintiffs and other similarly situated severs frequently performed uncompensated work during this unpaid "break" between shifts.

52. During peak season, and on busy days, servers were not permitted to leave the premises, and were engaged to wait until they had customers seated in their section or were required to perform other duties by Defendants during this unpaid "break."

53. Defendants did not close the doors to the public between the transition from day to evening shift.

54. Servers arriving for the evening shift were expected perform certain job duties, based on business demands, including but not limited to the following:

A. Inspecting, retrieving, transporting, and gathering food preparation utensils and ingredients, including but not limited to, replenishing the cut lemon supply, replenishing the sweetened and unsweetened tea, preparing and/or replenishing sauces, preparing and/or replenishing salad dressings, and preparing and/or replenishing cinnamon butter.

B. Inspecting work areas, retrieving, transporting, and gathering cleaning tools and solutions.

C. Cleaning bathrooms, wiping mirrors, toilets, sweeping and mopping floors.

D. Cleaning kitchen areas including rolling up floor mats, sweeping floors, and mopping floors.

E. Cleaning the outdoor seating areas, including wiping down chairs, tables, and sweeping.

F. Cleaning the indoor seating areas, including wiping down chairs, tables, sweeping, and mopping.

G. Checking and refilling tabletop condiments, salt and pepper shakers, sugar packets.

H. Inspecting and folding napkins.

I. Inspecting, cleaning, polishing, and rolling silverware.

J. Inspecting, cleaning, and polishing glassware.

K. Inspecting, setting up, stocking the upstairs dining area and kitchen.

L. Cleaning and wiping tables and seating.

M. Configuring table seating and serving areas

N. Retrieving and setting up candle holders.

O. Rolling mats, sweeping, and mopping the upstairs kitchen.

P. Retrieving, transporting, and stocking the upstairs kitchen area with dishes, glassware, and silverware.

Q. Preparing gumbo and crab bisque.

55. After servicing the last customer, including the closing of tickets, Plaintiffs and similarly situated servers are required to complete certain assigned duties, including but not limited to the following:

A. Polishing 5 racks of glasses per person.

B. Rolling 50 sets of silverware.

C. Cleaning bathrooms.

D. Breaking down and cleaning server alley by removing mats, sweeping, and mopping the floor.

E. Setting up sections, which may include place settings, refilling salt and pepper dispensers, sweeping, sections, and mopping the public areas.

F. Breaking down and cleaning the soup stations including rotating soups, and cleaning and sanitizing trays.

G. Breaking down tea stations including cleaning urns

H. Breaking down the upstairs including cleaning kitchen surfaces, retrieving and transporting food and stowing in the kitchen, wiping down the refrigerator, sweeping and mopping the kitchen.

56. Defendants generally stopped seating customers at 10:00PM on weekdays, and 11:00 PM on weekends.

57. Defendants extended operating hours beyond the actual business hours based on demands of customers.

58. Defendants required Named Plaintiffs, and all other similarly situated servers, to purchase special fishing-style shirts that were required by Defendants to be monogrammed with the company's logo at the servers' expense. They were also required to purchase aprons and/or Defendants' logo t-shirts.

59. Named Plaintiffs, and all other similarly situated servers, were required to maintain their shirts and aprons by laundering and ironing them to Defendants inspection standards.

60. Defendants did not pay or reimburse Plaintiffs the costs of the shirts or aprons, the costs of embroidering the shirts, and/or the maintenance of these Defendant-mandated tools of the trade. Defendants did not pay servers for the time spent purchasing, embroidering or maintaining these uniforms.

61. Because Defendants claimed a tip credit for their servers, the servers were deemed to be making the minimum wage. Therefore, any deduction or de facto deduction or kickback reduces the servers below the minimum wage and also violates the tip credit provisions such that Defendants may no longer avail themselves of the tip credit.

62. Defendants required Named Plaintiffs and all other similarly situated servers to purchase tools of the trade including wine keys, pens, lighters, and paper, and Defendants failed to reimburse for these items.

63. Defendants maintained a policy and practice of charging Plaintiffs and similarly situated servers to pay half the menu listed price for reported food errors.

64. Defendants had a payroll practice to minimize or altogether avoid overtime compensation to the Named Plaintiffs, and all other similarly situated servers, either by failing to

include all captured time, altering time records, instituting a labor budget capping hours used for payroll.

65. Defendants also required Plaintiff and similarly situated servers to attend meetings but claimed a tip credit for those hours, even when they did not continue to work as servers following the meetings.

66. Defendants required their servers to learn and study their menus and food and beverage offerings and even required them to pass menu tests, but Defendants did not pay their servers for time spent studying Shipp's menus and food and beverage offers despite that fact that Defendants instructed and required servers to study. Servers studied off the clock without compensation as Defendants did not provide any paid time to study for menu tests. Defendants claimed a tip credit for time spent by servers taking the test.

67. Defendants did not pay Plaintiffs, and similarly situated servers, the proper minimum wage rate for time spent performing non-tipped work in excess of 20% of their worktime or shift.

68. Defendants violated the FLSA because they did not pay Plaintiffs, and similarly situated servers, for all hours worked, thereby denying servers of their minimum wages and overtime wages.

69. Defendants claimed a tip credit and/or did not pay at all for time spent by servers preparing and taking menu tests.

70. This action is brought to recover unpaid compensation, in the form of unpaid wages and overtime compensation, owed to Plaintiffs, and all similarly situated servers employed by Defendants, pursuant to the FLSA.

### III. Fair Labor Standards Act Collective Action Allegations

71. At all times material to this action, the named, representative Plaintiffs were all "employees" of Defendants as defined by § 203(e)(1) of the FLSA, and worked for Defendants within the territory of the United States within three years preceding the filing of the instant suit.

72. At all times material to this action, Defendants each were and are an "employer" of the Plaintiffs and all other servers who worked at Shipp's as defined by § 203(d) of the FLSA.

73. The minimum wage and overtime provisions set forth in §§206 and 207, respectively, of the FLSA apply to Defendants, and the Plaintiffs, as well as all those similarly situated, were covered by §§206 and 207 of the FLSA while they were employed on an hourly basis by Defendants.

74. At all times material to this action, Defendants were each an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA, and have an annual gross volume of sales which greatly exceeds $500,000.

75. The provisions set forth in §207 of the FLSA apply to Defendants, and the Plaintiffs and all similarly situated servers were covered by §207 of the FLSA during their employment with Defendants. The Plaintiffs and all similarly situated Servers employed by Defendants were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendants. Their interstate commercial activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state, and processing credit card transactions that crossed state lines.

76. On information and belief, Defendants have intentionally failed and/or refused to pay Plaintiffs and all other similarly situated servers according to the provisions of the FLSA.

77. Defendants actions, as set forth more fully above, in failing to compensate the named, representative Plaintiffs, as well as those similarly situated, in accordance with the provisions of the FLSA were willful.

78. Defendants' systems and practices relating to its invalid tip pooling/sharing arrangement resulting in the misappropriation of tip monies, non-payment of wages and overtime to Plaintiffs and all similarly situated servers, disqualifying the Defendants from claiming any FLSA minimum wage and overtime exemptions, have existed since at least May of 2014.

79. Defendants' failure violated the "Free and Clear" payment regulations by not paying for or reimbursing the costs of tools of the trade used in and/or are specifically required by Defendants for the particular work they employed Plaintiffs and Servers, cutting into the minimum and overtime wages required to be paid under the FLSA.

80. Defendants failed to reimburse Plaintiffs, and similarly situated servers during the first workweek for pre-employment expenses which primarily benefited the employer, to the point that wages were at least equivalent to the minimum wage.

81. Defendants failed to pay or reimburse Plaintiffs and similarly situated servers for post-hiring costs of uniforms and tools of the trade, uniform and apron maintenance, including laundering, ironing, or other special treatment.

82. Defendants failed to compensate Plaintiffs and all other similarly situated employees for time spent acquiring, embroidering and/or maintaining uniforms and tools of the trade.

83. Defendants failed to compensate Plaintiffs and all other similarly situated employees for time spent studying Shipp's menu and food and beverage offerings.

84. On information and belief, Defendants have been aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA since at least May of 2014. Despite this knowledge, Defendants have failed to pay the Plaintiffs and similarly situated servers the amount of pay required by the FLSA.

85. There are numerous similarly situated servers of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants and are readily identifiable and can be located through Defendants' records - specifically, all servers who have been employed by Defendants and have not been properly compensated would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

86. On information and belief, Defendants have engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay only means of securing adequate relief.

87. Plaintiffs and all other similarly situated Servers and bartenders are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

### IV. PRAYER FOR RELIEF

WHEREFORE, premises considered, the named, representative Plaintiffs, individually, and on behalf of all other similarly situated persons, pursuant to 29 U.S.C. § 216(b), pray for the following relief:

1. that process issue against Defendants and that the Defendants be required to answer within the time period provided by applicable law;

2. that the Court order that Plaintiffs may issue notice to all similarly situated persons;

3. that other similarly situated past or present employees be given the opportunity to join in this lawsuit as party-plaintiffs by filing written consents pursuant to 29 U.S.C. § 216(b);

4. that Plaintiffs, and all others who file consents, be awarded damages in the amount of their unpaid wages, and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), and/or prejudgment interest;

5. that Defendants be required to pay Plaintiffs' attorneys' fees;

6. that Defendants be required to pay the costs and expenses of this action;

7. that Plaintiffs be granted such other, further and general relief to which they may show themselves entitled; and,

8. that a jury be impaneled to hear this cause of action at trial.

## VI. JURY DEMAND

THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully Submitted this 5th day of May, 2017:

*/s/ Abby M. Richardson*
Abby M. Richardson (RICHA3209)
**RICHARDSON LAW FIRM, LLC**
118 North Royal Street, Suite 100
Mobile, Alabama 36602
Telephone:   251.338.1695
Facsimile:   251.338.1698
*abby@richardsonlawllc.com*

*/s/ Daniel E. Arciniegas*
Daniel E. Arciniegas (ASB0-7809-D67A)
Charles P. Yezbak, III*
**YEZBAK LAW OFFICES**
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Telephone: 615.250.2000
Facsimile: 615.250.2020
[dea@yezbaklaw.com](mailto:dea@yezbaklaw.com)
[yezbak@yezbaklaw.com](mailto:yezbak@yezbaklaw.com)
*Counsel for Plaintiffs*

*Pro Hac Vice Motion Incoming

**DEFENDANTS TO BE SERVED VIA PERSONAL PROCESS SERVER, JOHN GODWIN:**

Robert M. Shipp
27844 Canal Road
Orange Beach, Alabama 36561

Regina E. Shipp
27844 Canal Road
Orange Beach, Alabama 36561

Sportsman Fish House, LLC d/b/a Shipp's Harbour Grill
c/o Robert M. Shipp (registered agent)
27844 Canal Road
Orange Beach, Alabama 36561