**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **APRIL R. NAIL,** *et al.,* | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 17-00195-KD-B** |
| | ) | |
| **ROBERT M. SHIPP,** *et al.,* | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Plaintiffs' motion for partial summary judgment (Doc. 155), Defendants' Response (Doc. 158), and Plaintiffs' Reply (Doc. 159).

**I.   Findings of Fact**[1]

This is a collective action under the *Fair Labor Standards Act*, 29 U.S.C. § 201 *et seq*. (FLSA)[2] based on activities at an Orange Beach, Alabama restaurant.  (Doc. 1).  Named Plaintiffs Jordin Ballard, Richard Boyett, Mark L. Hopper, and April R. Nail (collectively with the opt-in plaintiffs) allege that Defendants Robert "Matt" Shipp, Regina Shipp, and Sportsman Fish House, LLC (d/b/a Shipp's Harbour Grill) violated their FLSA rights while they were employed at the restaurant.  (Id.)[3]  In part, Plaintiffs assert the Defendants claimed an improper tip credit and failed to reimburse them for uniforms, violating FLSA minimum wage compensation obligations.  (Id.)

---

1 The facts are taken in the light most favorable to the non-movant.  Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).  The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."  Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

2 The case was conditionally certified on September 14, 2017 based in part on Defendants' consent.  (Doc. 46).  Defendants were given the opportunity to move to decertify, but did not do so.

3 The Department of Labor investigated alleged wage and hour FLSA violations at the restaurant on two (2) occasions; in 2012 and in 2017. (Doc. 156-4 (Defs' Interrog. Resp #19); Doc. 156-5 (DOL Report)).

The federally mandated minimum wage is $7.25/hour.  29 U.S.C. § 206(a)(1)(C).  At the restaurant, the Defendants paid plaintiffs (employed as servers) a direct cash wage of $2.13/hour and claimed a tip credit of $5.12/hour.  (Doc. 156-1 (Dep. M.Shipp at 70)).  The restaurant also employed a tip-out system, i.e., at the end of each shift, servers ran a paper report showing their gross sales and 3% of the gross sales was deducted from their tips .  (Doc. 156-1 (Dep. M.Shipp at 48)).  Defendants required -- as a condition of employment -- that servers place 3% of their gross sales in a tip pool for distribution to other employees; 1% to bussers, 1% to food runners, and 1% to bartenders. (Doc. 156-1 (Dep. M.Shipp at 33, 70-71, 196); Doc. 156-4 (Defs' Interrog. Resp #1)).  During training, employees were told about the tip-out process (Doc. 156-1 (Dep. M.Shipp at 173-174); Doc. 156-2 (Dep. R.Shipp at 223-225)), and employees "learned the tip sharing system nightly by doing."  (Doc. 156-4 (Defs' Interrog. Resp. #1,7)).  General Manager Richard Thomas (Thomas) administered the tip-out system.  (Doc. 156-1 (Dep. M.Shipp at 77)).

Additionally, the Defendants required employees to wear uniforms consisting of a logo t-shirt and an apron. (Doc. 156-1 (Dep. M.Shipp at 262)).  Servers were required to buy the aprons as part of the uniform.  (Doc. 156-1 (Dep. M.Shipp at 245, 262); Doc. 156-4 (Defs' Interrog. Resp. #5, 7, 12)).   Regarding shirts, until 2017 Defendants only provided one (1) shirt to tipped employees free of charge. (Doc. 156-4 (Defs' Interrog. Resp. ##5, 10); Doc. 156-2 (Dep. R.Shipp at 228)).  Defendants charged the tipped employees $10/shirt to purchase additional shirts.  (Id.) Following a second Department of Labor (DOL) investigation of the restaurant in 2017 -- during which the DOL investigator told Matt Shipp the restaurant was required to provide two (2) free shirts to tipped employees as most worked two (2) double shifts/week and one (1) shirt was insufficient -- Defendants began providing two (2) free shirts. (Doc. 156-1 (Dep. M.Shipp 59);

Doc. 156-5 (DOL Report); Doc. 156-4 (Defs' Interrog. Resp. ##5)).

## II.   **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Clark v. Coats &

3

Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

### III.   **Discussion**[4]

Plaintiffs move for partial summary judgment on: 1) the personal liability of the individual Shipp defendants as FLSA employers; 2) Defendants' failure to satisfy Section 203(m)'s prerequisites before claiming a tip credit; 3) Defendants' improper shifting of business expenses for uniforms to employees; 4) the willfulness of Defendants' FLSA violations; and 5) Defendants' failure to provide evidence in support of their 9th, 10th, 12th and 13th affirmative defenses.

---

[4] Plaintiffs filed 685 pages in support of summary judgment (Docs. 156-1 to 156-5), yet only cite to and rely on a portion of same. As illustration, Plaintiffs submitted the entirety of Matt Shipp's 307 page deposition and Regina Shipp's 292 page deposition, yet only cite @69 pages (@42 pages of Matt Shipp's deposition and 27 pages of R.Shipp's deposition). As noted in July v. Board of Water and Sewer Commr. of City of Mobile, 2012 WL 5966637 at note 10 (S.D. Ala. Nov. 29, 2012): "[t]he Court cannot and will not make a party's summary judgment argument for it, based on record facts that the party has not cited…. See Rule 56(c), Fed.R.Civ.P. (clarifying that parties must support their factual positions on summary judgment by 'citing to particular parts of materials in the record' and that the court 'need consider only the cited materials'); Williamson, 834 F.Supp.2d at 1314 n.2 ('The Court will not scour uncited portions of the summary judgment record for evidence that might bolster either side's arguments.')…." In sum, a party may not, by dumping of a mass amount of evidentiary material into the record, unilaterally shift to the Court its burden of identifying evidence supporting its position. Accordingly, the Court's review is limited to those portions of the materials to which the parties have made *specific citation*. Moreover, Plaintiffs refer to the deposition of Richard Thomas; no such deposition was submitted and is thus not before the Court.

### A.   Defendants as FLSA Employers

Defendants "agree they are 'Employers' as defined by the Act and are therefore subject to liability." (Doc. 158 at 2).  Thus, "there is no dispute that Robert Shipp and Regina Shipp each own 50% of Sportsman Fish House, LLC d/b/a Shipps Harbour Grill and that they maintained operational control of the enterprise at all times relevant to this litigation….Defendants…concede they are employers as defined by the Act."  (Id. at 3).  As such, Plaintiffs' motion is **GRANTED** as to the claim that Robert Shipp and Regina Shipp are individually liable under FLSA.

### B.   Tip Credit - Section 203(m)

Plaintiffs contend that the Defendants' improperly claimed a tip credit to satisfy their minimum wage payment obligations.  As grounds, Plaintiffs assert that the Defendants failed to inform them of Section 203(m)'s requirements, and that an employer cannot take a tip credit for an employee "unless such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m).

The FLSA requires employers to pay employees the $7.25/hour federal minimum wage. 29 U.S.C. § 206(a)(1)(C).   "Employers can meet this obligation through a base wage or by a tip credit equal to the difference between the base wage and the statutorily required minimum wage." Dalley v. CG RYC, LLC, 2018 WL 7629048, *2 (S.D. Fla. Aug. 31, 2018).[5]  Pursuant to the

---

[5]  https://www.dol.gov/whd/regs/compliance/whdfs15.htm, *Fact Sheet #15: Tipped Employees Under the…FLSA* (last visited 8/5/19):

 Tip Credit: Section 3(m) of the FLSA permits an employer to take a tip credit toward its minimum wage obligation for tipped employees equal to the difference between the required cash wage (which must be at least $2.13) and the federal minimum wage. Thus, the maximum tip credit that an employer can currently claim under the FLSA section 3(m) is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13). Under certain circumstances, an employer may be able to claim an additional overtime tip credit against its overtime obligations.

FLSA, minimum wage employees who receive more than $30/month in tips are defined as tipped employees within the minimum wage system (i.e., tipped minimum wage employees), and may be paid via a tip credit process tied to the federal minimum wage rate.  The maximum tip credit against minimum wage is $5.12/hour and the minimum cash wage is $2.13/hour (to total the federal minimum wage rate of $7.25/hour).[6]  As discussed in Gutierrez v. Galiano Enterp. of Miami, Corp., 2019 WL 2410072, *5 (S.D. Fla. Jun. 7, 2019):

> ….if the employee is a "tipped employee," [29 U.S.C. § 203(m)]authorizes an employer to pay the employee (1) an hourly wage of $2.13 plus (2) an additional amount in tips that brings the total wage up to the federal minimum wage of $7.25 an hour. 29 U.S.C. § 203(m). An employer who uses an employee's hourly tips to reach the minimum hourly wage due the employee is said to take a "tip credit." This means that a tip credit is the difference between the minimum wage and the amount paid to a tipped employee. *See Crate v. Q's Rest. Grp. LLC, 2014 WL 10556347, at *2 (M.D. Fla. May 2, 2014)*. It essentially allows an employer of a tipped employee to pay a reduced minimum wage if the difference between the current minimum wage rate and the reduced rate that the employer pays is covered with the employee's actual tips. *See* 29 U.S.C. § 203(m).

See also e.g., Malivuk v. Ameripark, LLC, 694 Fed. Appx. 705, 706-707 (11th Cir. 2017) (same); P&k Rest. Ent., LLC v. Jackson, 758 Fed. Appx. 844, 847-848 (11th Cir. 2019).

However, for an employer to be able to claim the tip credit, the employer must establish that the tipped employee was informed about the tip credit.  As stated in Pellon v. Business Rep.

---

[6] https://www.dol.gov/whd/state/tipped.htm (last visited 8/6/19), *Minimum Wages for Tipped Employees*, January 1, 2019.  As explained in Wajcman v. Investment Corp. of Palm Beach, 2008 WL 783741 (S.D. Fla. Mar. 20, 2008):

> The FLSA allows employers to pay less than minimum wage to employees who receive tips. 29 U.S.C. § 203(m). The mechanism it creates to allow employers to pay less than minimum wage is the "tip credit." …..
>
> ***
>
> …. employers can only take a tip credit toward the wages of employees who qualify as "tipped employee [s]." A "tipped employee" is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

Int., Inc., 528 F.Supp.2d 1306, 1309-1310 (S.D. Fla.  2007), *aff'd* 291 Fed. Appx. 310 (11th Cir. 2008) (per curiam) (emphasis added):

> …The difference between the amount an employee must be paid under the minimum wage law and the amount directly paid to a tipped employee is commonly referred to as a "tip credit." *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.51. **The tip credit is not an exemption; instead, it is set forth in the definition of the required minimum wage. The following requirements must be met to satisfy Section 203(m): (1) the tip credit must be claimed for qualified tipped employees; (2) the employees must receive proper notice of Section 203(m); and (3) all tips received by the employees must be retained by them.**

Section 203(m)(2)(A) further provides that:

> **(2)(A)** In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
> **(i)** the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> **(ii)** an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. **The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection**, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m)(2)(A) (emphasis added).[7]

More specifically, to meet the notice requirement the employer must inform its employees

that it intends to treat tips as satisfying part of its minimum wage obligations.  *Kilgore v. Outback*

---

7  See also Miller v. Spence, 2015 WL 1862941, *7 (S.D. Ala. Apr. 22, 2015) (Report & Recommendation - adopted) ("In order for an employer to qualify for a 'tip credit' under 29 U.S.C. § 203(m), the employer must establish that…. (2) the employees received proper notice of § 203(m)…. *Garcia v. Koning Rest. Int'l, LLC,* 2013 U.S. Dist. LEXIS 186533, 2013 WL 8150984 (S.D.Fla. May 10, 2013)…."). See also e.g., P&k, 758 Fed. Appx. at 848 ("An employer may not take a tip credit unless, among other requirements, the employee "has been informed by the employer of the provisions" of the FLSA pertaining to the tip credit. *Id.* § 203(m)(2)(A); *see also Kubiak v. S.W. Cowboy, Inc.,* 164 F.Supp.3d 1344, 1355 (M.D. Fla. 2016) ("If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result[]")….").

*Steakhouse of Fla, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998)("[A]n employer must inform its employees of its intent to take a tip credit toward the employer's minimum wage obligation.") *Holder v. MJDE Venture, LLC*, 2009 WL 4641757, *1-2 (N.D. Ga. 2009)(same); Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1322 (1ˢᵗ Cir. 1992) (affirming in part, vacating and remanding in part, the lower court ruling) ("We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations[]").  The "FLSA clearly charges the employer with an affirmative obligation in this respect[]" and defendants cannot "substitute their statutory responsibility for an alleged general awareness of an industry-wide practice."  Bernal v. Vankar Enters., Inc., 579 F.Supp.2d 804, 809-810 (W.D. Tex. 2008) ("although an employer need not 'explain' the tip credit to an employee, Courts have widely interpreted section 203(m) to require at a minimum that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations[]").

As summarized in Pellon, 528 F.Supp.2d at 1310-1312 (emphasis added):

> …**the Court must address what is required for employees to be "informed by the employer of the provisions of this subsection," namely the tip credit provision. 29 U.S.C. § 203(m). Essentially, an employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations**. *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir.1998). "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." *Chan v. Triple 8 Palace, Inc.,* No. 03 Civ. 6048(GEL), 2006 WL 851749, at *19 (S.D.N.Y.2006) (citing *Kilgore,* 160 F.3d at 298–300). To "inform" an employee requires less effort than it would to "explain" the tip credit to the employees. *Kilgore,* 160 F.3d 294, at 298. One court addressing skycaps in particular held that explaining to the plaintiffs that they would receive $2.13 per hour and the remainder of their pay would be in tips satisfied the notice requirement of 29 U.S.C. § 203(m). *Hardwick v. Complete Skycap Servs., Inc.,* 04–CV–88 (D.Ariz.2005), *aff'd,* 2007 WL 2050867 (9th Cir. July 13, 2007). Department of Labor regulations explicitly require employers to post "a notice explaining the [FLSA minimum wage provisions]." 29 C.F.R. §

516.4. Because it would defy logic to require the display of inadequate information regarding the minimum wage and employer tip credit, a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice.

***

….**the FLSA does not require a rigorous explanation to employees about how the tip credit works. In fact, such an explanation would serve no logical purpose. Provided that the employees are advised and receive a wage plus tip amount equal to minimum wage or higher** (and the Court does not see in the record that Plaintiffs have earned less than minimum wage in their adjusted wage rate plus tips), **they do not need to understand how the statutory mechanism applies to their employer. In fact, "employee understanding" would be an untenable legal standard in cases such as this one.**

Department of Labor regulation 29 C.F.R. § 531.59(b) (emphasis added) clarifies what information

an employer must provide to its employees:

> (b) As indicated in § 531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee." **Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.** The credit allowed on account of tips may be less than that permitted by statute (minimum wage required by section 6(a)(1) minus $2.13); it cannot be more. In order for the employer to claim the maximum tip credit, the employer must demonstrate that the employee received at least that amount in actual tips. If the employee received less than the maximum tip credit amount in tips, the employer is required to pay the balance so that the employee receives at least the minimum wage with the defined combination of wages and tips. With the exception of tips contributed to a valid tip pool as described in § 531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.

The obligation to inform an employee can be met by displaying a poster that contains the

required information.  Miller v. Gariabldi's Inc., 2018 WL 1567856, *4 (S.D. Ga. Mar. 30, 2018)

9

("[a] majority of district courts in this Circuit have concluded the prominent display of a poster

that includes Department of Labor approved language satisfies the notice requirement. *E.g.*, Ide v.

Neighborhood Rest. Partners, LLC, 32 F. Supp. 3d 1285, 1293 (N.D. Ga. 2014), *aff'd*, 667

Fed.Appx. 746 (11th Cir. 2016); Garcia v. Koning Rest. Int'l, L.C., No. 12-CV-23629, 2013 WL

8150984, at *4 (S.D. Fla. May 10, 2013); Pellon, 528 F. Supp. 2d at 1310.").

Further, the burden is on the employer to establish entitlement to the tip credit, *Barcellona*

*v. Tiffany English Pub, Inc.,* 597 F.2d 464, 467 (5th Cir.1979).[8]   Otherwise the employee is

"entitled to the full minimum wage for every hour worked." Id.  Inclan v. New York Hosp. Grp.,

Inc., 498 (S.D.N.Y. 2015) ("the employer has the ultimate burden to prove compliance with the

tip credit notice requirement[.]").  See also e.g., Whitehead v. Hidden Tavern, Inc., 765 F.Supp.2d

878, 881 (W.D. Tex. 2011) ("[T]he employer must establish the entitlement to the tip credit after

the employee pleads a violation of the tip credit provision[]"); Acosta v. Mezcal, Inc., 2019 WL

2550660, *8 (D. Md. Jun. 20, 2019) ("Defendants have the burden to show eligibility for the tip

credit").

The uncontested evidence reveals: 1) Defendants paid employee servers $2.13/hour; 2)

Defendants claimed a tip credit of $5.12/hour (difference between $7.25/hour for minimum wage

and the $2.13/hour paid); and 3) Defendants required tip pooling as a condition of employment

(that servers pay 3% of their gross sales into the tip pool to be disbursed 1% to bussers, 1% to food

runners, and 1% to bartenders).

Plaintiffs claim that the defendants did not inform the tipped employees about the legal

requirements of Section 203(m).  As evidentiary support, plaintiffs point to the testimony of Matt

---

8 In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh
Circuit adopted as binding precedent decisions of the former Fifth Circuit prior to October 1, 1981.

and Regina Shipp[9] and argue that Defendants have only testified that they informed their servers about the tip out process.  Thus, plaintiffs rely on the absence of evidence that they were informed about the tip credit provisions.

In response, Defendants reference Matt Shipp's testimony to assert that they notified and trained their employees on tip pooling (tip-out process) before they began working:

> I don't know if it was in the employee handbook or not. I'm not sure if it was. It may have been. But during the training process, it was explained because part of their training process was to checkout with whomever they were training with to be given an explanation of how the tip-out worked.

(Doc. 158-1 (Dep. M.Shipp at 173-174)).  Additionally, Defendants reference Regina Shipp's testimony that all employees were made aware of the tip-out process when they were interviewed and trained. (Doc. 158-4 (Dep. R.Shipp at 224)).  Moreover, Defendants highlight -- and cite to testimony (including that of a General Manager who trained employees on the tip out process) supporting that "nearly every one of the Plaintiffs deposed…testified that they received training on the tip-out process during training." (Doc. 158 at 6-11 (Doc. 158-3 (Dep. A.Miller at 10); Doc. 158-5 (Dep. R.Mink at 17); Doc. 158-6 (Dep. J.Ainsworth at 17-18); Doc. 158-7 (Dep. M.Strickland at 20-21; Doc. 158-8 (Dep. A.East at 17-18); Doc. 158-9 (Dep. D. Martel at 11); Doc. 158-10 (Dep. D.Denley at 9, 20-21)).  Further, Defendants cite: 1) depositions of the Plaintiffs regarding their understanding of the amount of cash wage to be paid to tipped employees (Doc. 158-5 (Dep. R.Mink at 16-17); Doc. 158-11 (Dep. E.Lillard at 27); Doc. 158-7 (Dep. M.Strickland at 20); Doc. 158-8 (Dep. A.East at 17-18)); and 2) evidence that plaintiffs were informed of their duty to clock out/in when performing non-tipped duties. (Docs. 158-12).

---

9 Thomas' testimony was referenced but not submitted.

Although Defendants cite to substantial evidence that the <u>tip-out process</u> was explained to the employees, they inadequately address the evidence that employees were informed about the <u>tip credit</u> provisions.   However, the Defendants have cited to sufficient evidence to avoid summary judgment. Specifically, the Defendants have cited to evidence that employees were trained about compensation (they were to receive $2.13 per hour and tips) and submitted statements signed by the employees that they understood that they were "a tipped employee and allowed to be paid an hourly rate below the required minimum wage."  (Doc. 158-12).  Considering the evidence in a light most favorable to Defendants and drawing all reasonable inferences in their favor, there is a material issue of fact as to whether the employees were properly informed of the tip credit provisions.  Summary judgment is **DENIED** on the claim that Defendants failed to properly advise the employees of the tip credit provisions.

**C.      Wage Deductions: Uniforms (Shirts and Aprons)**

Plaintiffs contend that Defendants' violated the FLSA by shifting business expenses to a minimum wage employee when they required that tipped employees purchase a second uniform shirt and an apron.  Plaintiffs argue that the FLSA deems tipped employees to be minimum wage workers.

Uniforms are primarily for the benefit of the employer, therefore a minimum wage employee cannot be required to purchase their own uniforms.  <u>Arriaga v. Florida Pacific Farms, L.L.C.</u>, 305 F.3d 1228, 1236 (11th Cir. 2002) ("An employer may not deduct from employee wages the cost of [uniforms]which primarily benefit the employer if such deductions drive wages below the minimum wage. *See* <u>29 C.F.R. § 531.36(b)</u>. This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment.")

Defendants argue the Defendants did not violate the FLSA because Plaintiffs earned "well in excess of the minimum wage." (Doc. 158 at 15). Defendants also argue Plaintiffs were provided free meals which should be included in their wages. The implicit argument being that the purchase of uniform items did not reduce the Plaintiffs' wages below minimum wage.

The parties do not dispute that Defendants required employees to wear uniforms -- a logo shirt and an apron. (Doc. 156-1 (Dep. M.Shipp at 262); Doc. 156-2 (Dep. R.Shipp at 145, 228-229)). For shirts, and after the 2012 DOL investigation at which time Defendants were found in violation for failing to provide one (1) free shirt to employees, Defendants reimbursed employees for one (1) shirt previously purchased, and then began providing one (1) shirt free of charge. (Doc. 156-4 (Defs' Interrog Resp. ##5, 10); Doc. 156-1 (Dep. M.Shipp at 14-15, 59, 242, 264)). However, Defendants charged employees for a *second* shirt in the amount of $10/shirt. (Id.; Doc. 156-1 (Dep. M.Shipp at 264); Doc. 156-2 (Dep. R.Shipp at 228)). Following the 2017 DOL investigation, Defendants were told by DOL that the working conditions (most tipped employees worked two (2) double shifts per week) required them to provide employees with two (2) shirts free of charge, which Defendants did, via reimbursing employees for the second shirt purchases. (Doc. 156-4 (Defs' Interrog Resp. #5); Doc. 156-1 (Dep. M.Shipp at 16, 59, 68, 265); Doc. 156-5 (DOL Report 9)).[10] Apparently, "checks were mailed and some were accepted and deposited and others were refused….[t]hose…refused are being held by the…[DOL]." (Doc. 158 at 17). Per Defendants: "[t]he restaurant paid all employees any amount the federal government said to pay

---

10 In addition to Section 531.3(d), the DOL requires that an employer supply its employees with "a sufficient number of uniforms required by work conditions to be worn." United States Dep't of Labor, Wage & Hour Division, WH Admin. Op. FLSA 2008-10, *3 (Oct. 24, 2008), https://www.dol.gov/whd/opinion/FLSA/2008/2008_10_24_10_FLSA.pdf

to employees for shirts. Those checks were mailed out to the names and addresses the government said to mail them to. Many checks were cashed. Many checks were returned, but each check that was returned was paid to the government." (Doc. 156-4 (Defs' Interrog Resp. #5)).  Thus, the record indicates that Defendants reimbursed the employees for the second shirt - whether or not those employees accepted those checks or refused them resulting in the DOL having control over them.  Additionally, Plaintiffs do not contend otherwise and/or that the reimbursement was insufficient or incorrect.

However, Defendants did not provide tipped employees with aprons free of charge, yet required their purchase as part of the uniform.  (Doc. 156-4 (Defs' Interrog. Resp. #12); Doc. 156-1 (Dep. M.Shipp at 262)).  Plaintiffs purchased the aprons and Defendants did not reimbursed Plaintiffs for aprons.  (Doc. 156-4 (Defs' Interrog. Resp. #5, 7)).  As explanation, Defendants assert that the DOL did not tell them that a free apron was required to be provided to the employees. (Doc. 158 at 18).  Regardless, each required purchase of an apron which reduced an employee's wages below minimum wage would violate the FLSA's tip-credit provisions.

The issue then is whether the Plaintiffs received sufficient remuneration above minimum wage to compensate for the purchase of the apron.  Tipped employees remuneration from the employer is the total of cash wages (in this case $2.13), the tip credit claimed (in this case $5.12) and the fair value of facilities furnished to the employee by the employer (e.g., meals).  29 C.F.R. §531.60.  The remainder of the money earned in tips is not remuneration.  As explained in the context of determining overtime pay, "tips [in excess of the tip credit] are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act." 29 C.F.R. §531.60.  Therefore, when determining whether Plaintiffs earned more than minimum

14

wage, tips received over the tip credit claimed are not considered.

However, free meals may be included to increase the Plaintiffs remuneration sufficiently above minimum wage such that there is no FLSA violation when an employee is required to buy an apron. That is, an employer's reasonable cost of meals provided to employees may be deemed "wages" to the employee.  Chavez v. Arancedo, 2018 WL 4610564, *7 (S.D. Fla. Sept. 24, 2018) ("Section 203(m)…defines a 'wage' to include the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board…or other facilities ..." 29 U.S.C. § 203(m). An employer is entitled to credit for the reasonable cost of furnishing certain non-cash items to the employee such as meals…for the employee's benefit, if the employee voluntarily accepts them. 29 C.F.R. § 552.100(b).").  The regulations specify that "other facilities" includes meals furnished at company restaurants to employees, and "meals are always regarded as primarily for the benefit and convenience of the employee." 29 C.F.R. § 531.32(a), (c).

However, for meals to be "counted" as wages (for such "wage credit" to be available to the employer), the employer must provide records, maintained on a weekly basis reflecting additions to wages or deductions from wages for these meals.  29 C.F.R. § 516.27; 29 C.F.R. § 516.28(b). As explained by the Eleventh Circuit in Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 473-476 (11th Cir. 1982) (footnote omitted, emphasis added)):

> Section 3(m) of the FLSA….allows employers to include the reasonable cost of servicing meals….or other facilities in employee wage…...[1] When calculating the amount of back wages due to an employee under the FLSA….the employer is entitled to a credit for the reasonable cost of providing the meals….The regulations promulgated by the Secretary define "reasonable cost" "to be not more than the actual cost to the employer of the board, …. or other facilities customarily furnished by him to his employees." 29 C.F.R. s 531.3(a) (1981). "'Reasonable cost' does not include a profit to the employer or to any affiliated person." Id. s 531.3(b). **The regulations require employers to keep certain records of the cost incurred in furnishing board…or other facilities, id. s 516.27(a), and also require the**

**employer to maintain records showing additions or deductions from wages paid for board…or other facilities on a work week basis. Id. s 516.28(b).**

The district court held that the employer has the burden of showing that he is entitled to the credits claimed under s 3(m) …and that in this case, the appellants had failed to satisfy that burden by proving the reasonable cost of the credit items. A review of the limited case law on point convinces us that the district court correctly placed the burden of proving the "reasonable cost" of providing board….or other facilities on the employer…..

***

…. **appellants have failed to prove the reasonable cost of the meals…which they claim was furnished to employees. The appellants have not kept the records required by 29 C.F.R. s 516.27 with respect to the cost of providing the meals….in question of with respect to the actual deductions claimed on a week-by-week basis**….

…..the burden to segregate permissible credits from impermissible ones was on the appellants. **Since appellants failed to adduce evidence of reasonable cost of providing board….to employees…the district court correctly denied appellants credit for meals ….**

While the reasonableness burden is on the employer, such is met by complying with the FLSA's recordkeeping provisions or seeking the Administrator's determination. Id. at 475.

Defendants summarily contend that their provision of free meals on a "regular and customary basis" to the employees makes-up for any shifting of expenses related to uniforms -- i.e., a credit "which will more than offset any alleged violations." (Doc. 158 at 16, 20). Plaintiffs respond that the meals should not be counted as wages because the Defendants failed to keep required records to justify a wage credit for the meals. Plaintiffs also point out that Matt Shipp testified that "the purpose" of the meals "was for employee morale as well as [for] them to understand my food", and thus the free meals were not primarily for employee benefit. (Id. at 4 (citing Doc. 156-1 (Dep. M.Shipp at 303)).

16

Defendants have not submitted any records regarding the free meals, as required per the regulations. The only evidence cited by the Defendants regarding meals is that of Matt Shipp's Affidavit. (Doc. 158-13 (Aff. M.Shipp)).  Shipp states that during all relevant times, the restaurant:

-provided free meals to all employees on a regular and customary basis;
-employees would sign up on a list with meals to be served to them between 2-3:00pm;
-the meals provided were of the same value and quality as those served to customers;
-on average, 30-40 meals were served to employees each and every day; and
-the average cost was $8.00 for each meal.

(Id. at 1).

Shipp's affidavit is insufficient for this court to find that an issue of fact remains for the jury to determine whether the cost of the apron reduced Plaintiffs wages below the minimum wage. First, there is no evidence substantiating, not even an averment, that the $8.00 cost for the meals was reasonable. See Donovan, 676 F.2d at 475 ("[A]n employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost").  But more importantly, due to an absence of records or even an averment, there is no evidence cited that the meals were received by the Plaintiffs at issue.  Accordingly, because the Defendants have failed to put forth sufficient evidence to substantiate a claim (wage credit for free meals) on which they have the burden of proof, Plaintiffs motion for summary judgment on the claim that Defendants violated the FLSA by requiring the tipped employees to pay for their apron is **GRANTED**.

## D.    Willfulness

Plaintiffs seek summary judgment on their claim that Defendants willfully violated the FLSA.  The Court assumes that Plaintiffs contend all the alleged FLSA violations were willful.

17

However, only the violation regarding employees' payment for the apron has been established at this point.  Thus, the motion is premature as to all of the other claimed violations.

FLSA claims generally are subject to a two (2) year statute of limitations, but the Act extends the limitations period to three (3) years for *willful* violations.  29 U.S.C. § 255(a). Plaintiffs bear the burden of proving willfulness by a preponderance of the evidence. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-1163 (11th Cir. 2008).   To do so, Plaintiffs must demonstrate the Defendants "either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." Id. at 1163.  Plaintiffs' claim focuses on Defendants' alleged "reckless disregard."  Reckless disregard is defined as follows: the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

Plaintiffs rely on the fact that the DOL investigated the Defendants for FLSA violations twice.  Additionally, even with the investigations, the Shipps did not receive formal FLSA training, did not retain an attorney to advise them on FLSA compliance, performed only cursory research via Google, and did not read the FLSA statute.  (Doc. 156-1 (Dep. M.Shipp at 55-56, 62); Doc. 156-2 (Dep. R.Shipp at 31)).  Plaintiffs argue that this inaction by Defendants is tantamount to "reckless disregard" regarding whether their conduct was prohibited by the FLSA.

The Eleventh Circuit in Gilbert v. City of Miami Gardens, 625 Fed.Appx. 370, 372 (11th Cir. 2015) held that the issue of whether a FLSA violation is willful was for the jury, not the court. In discussing the facts surrounding willfulness, the Court stated: "[t]he relevant question in this case is whether, based on the evidence at trial, a reasonable jury could decide that the City failed to make adequate inquiry into whether its payment of Gilbert's wages complied with the FLSA [the reckless disregard standard]." Id.

18

Defendants argue that "there are clearly questions of fact" that belong to the jury as to whether any violations were willful.  Defendants rely on their attempt to comply with the findings of the first DOL investigation and Regina Shipp's investigation of FLSA requirements online in an effort to show that any violations were not willful.  Upon consideration, the record indicates genuine issues of material fact as to whether any violations were willful.  As such, Plaintiffs' motion is **DENIED** as to this claim.

### E.    <u>Affirmative Defenses</u>

Plaintiffs move for summary judgment on the Defendants' claim that their recovery is barred or limited -- based on Defendants' 9th, 10th, 12th and 13th affirmative defenses (good faith defense against liquidated damages, the *de minimis* defense, preclusion defenses, and contract defenses).  With regard to the *de minimis*, contract, and preclusion affirmative defenses (10th, 12th and 13th), Defendants have conceded same on summary judgment: "Defendants agree that Affirmative Defenses for De Minimis, Preclusion Doctrine, and Contract Doctrine are due to be dismissed."  (Doc. 158 at 2).  As such, these defenses will not be considered at trial.

Concerning Defendants' good faith affirmative defense (9th), the Court finds as follows.  Per 29 U.S.C. § 216(b), "[a]ny employer who violates the provisions of [the FLSA]...shall be liable to the employee or employees affected in the amount of...their unpaid overtime compensation ..and in an additional equal amount as liquidated damages[]").  However, as explained in <u>Meeks v. Pasco Cty. Sheriff</u>, 688 Fed. Appx. 714, 717 (11th Cir. 2017), there exists a good faith defense:

> … If…"the employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation[,] ... the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260; *see also Spires v. Ben Hill Cty.*, 980 F.2d 683, 689 (11th Cir. 1993) ("[L]iquidated damages are mandatory absent a showing of good faith.").  This good-faith defense to liquidated damages requires "an employer [to] show

that it acted with both objective and subjective good faith." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008)

Even so, "'[a]pathetic ignorance is never the basis of a reasonable belief," and the objective component of the defense thus "requires some duty to investigate potential liability under the FLSA.' *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir.1979)." Smith v. Werner Enterp., Inc., 2015 WL 4459446, *3 (S.D. Ala. Jul. 21, 2015).  Moreover, "[t]he employer bears the burden of establishing both the subjective and objective components of that good faith defense against liquidated damages. *Dybach,* 942 F.2d at 1566; *Spires v. Ben Hill County,* 980 F.2d 683, 689 (11th Cir.1993)."  Alvarez, 515 F.2d at 1163.  See also White v. NIF Corp., 2017 WL 210243, *7-8 (S.D. Ala. Jan. 18, 2017) (discussing facts in a tip credit case related to liquidated damages/good faith defense and denying summary judgment in part).

Defendants argue entitlement to the good faith defense -- that they have shown to the satisfaction of the Court that the act/omission giving rise to such action was in good faith and that they had reasonable grounds for believing the act/omission was not an FLSA violation. Defendants reference the subjective and objective components of this defense, first noting the subjective -- an employer's honest intention to comply with the FLSA -- as creating an issue of fact for the jury to decide, not to be resolved on summary judgment.  While not expressly stating as such, Defendants arguments *imply* that they honestly intended to comply with the FLSA.

Additionally, Defendants assert that the objective component is met -- whether the employer had reasonable grounds to believe that their conduct complied with the FLSA. Following the 2012 DOL investigation, the Defendants provided one (1) shirt per employee until the recent investigation informed them they needed to provide two (2) shirts; Regina Shipp went online and studied the FLSA requirements following which changes were implemented to ensure

compliance (e.g., employees were trained on clocking-out as a server and clocking-in at minimum wage any time employees worked more than one (1) hour after the closing of the restaurant -- with employees signing a document agreeing to this standard); and Defendants provided free meals to employees for which they claim a credit "which will more than offset" any alleged violations. (Doc. 158 at 20).  In rebuttal, Plaintiffs dispute that any of these acts establish a good faith affirmative defense for the Defendants, arguing that "[m]ore relevant are undisputed facts like Defendants' failure to read the FLSA, failure to seek legal advice about the FLSA, and complete lack of training on the FLSA after a DOL investigation."  (Doc. 159 at 15).

Upon consideration, the Court finds there exists a genuine factual dispute as to whether the good faith defense is applicable and if so, as to what claims.  Thus, Plaintiffs' motion is **DENIED** as to this affirmative defense.

## IV.   <u>Conclusion</u>

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment is:

- **GRANTED** as to whether Defendants Robert Shipp and Regina Shipp are FLSA employers as such has been conceded;
- **DENIED** as to the FLSA's tip credit provisions due to the Defendants' failure to satisfy Section 203(m)'s notification prerequisites (to inform employees that they intended to treat tips as satisfying part of their minimum wage obligations);
- **GRANTED** as to the claim that requiring employees to pay for their apron violated the FLSA;
- **DENIED** as to willfulness violations due to the existence of a genuine factual dispute;
- Defendants' 10th, 11th and 12th affirmative defenses *(de minimis*, contract and preclusion) will **NOT BE CONSIDERED** at trial as these defenses have been conceded; and
- **DENIED** as to Defendants' 9th affirmative defense (good faith) due to the existence of a genuine factual dispute.

**DONE** and **ORDERED** this the **6th** day of **August 2019.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**