IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| APRIL NAIL, et al., | |
| Plaintiffs, | No. 1:17-cv-195-KD-B |
| v. | Chief District Judge DuBose |
| ROBERT SHIPP, et al., | Jury Demand |
| Defendants. | |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AWARD OF LIQUIDATED DAMAGES AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR OFFSET OF JURY AWARD

Under this Court's Order of January 21, 2020, [Doc. 204], Plaintiffs submit their Reply in Support of their Motion for Award of Liquidated Damages and Response in Opposition to Defendants' Motion for Offset of Jury Award. This Court should grant Plaintiffs' motion and deny Defendants' motion.

### INTRODUCTION

Following the presentation of the Parties' evidence and instructions by the Court, the jury returned a verdict in Plaintiffs' favor in this collective action under the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. §§ 201–19. Specifically, the jury found that Defendants willfully violated the FLSA by shifting their business expenses to Plaintiffs and systematically eliminating Plaintiffs' recorded hours worked. [Doc. 198-1.] The jury accordingly awarded damages to Plaintiffs for their back wages. [*Id.*]

Plaintiffs have asked this Court to award them liquidated damages equal to the back wages the jury awarded. [Doc. 203.] Defendants contend that this Court should not award liquidated damages to Plaintiffs and should instead offset the jury's damages awards by the amounts that Defendants allege they paid to the U.S. Department of Labor ("DOL") for Plaintiffs. [Doc. 207; *see also* Doc. 202, at 4.] The plain language of the FLSA and binding precedent from the United States Court of Appeals for the Eleventh Circuit support Plaintiffs' position. Defendants, on the other hand, ask the Court to act in direct contravention of a Congressional statute and binding precedent. This Court should award liquidated damages and deny an offset.

## ARGUMENT

### I. The plain language of the FLSA and binding Eleventh Circuit precedent mandate an award of liquidated damages to Plaintiffs.

As Plaintiffs explained in their motion, the unambiguous language of the FLSA and binding precedent from the United States Court of Appeals for the Eleventh Circuit require this Court to award Plaintiffs liquidated damages. [Doc. 203.] The relevant provision of the FLSA states:

> Any employer who violates the provisions of section 206 or section 207 of this title **shall be liable** to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an **additional equal amount as liquidated damages**.

29 U.S.C. § 216(b) (emphasis added). And in cases where a jury finds that the defendant willfully violated the Act, binding precedent from the Eleventh Circuit mandates that district courts award liquidated damages: "We conclude . . . that in an FLSA case a jury's finding in deciding the limitations period question that the employer acted willfully

2

**precludes the court from finding that the employer acted in good faith** when it decides the liquidated damages question." *Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1166 (11th Cir. 2008).

Defendants argue that it would be unfairly punitive for this Court to award liquidated damages to Plaintiffs. [*See* Doc. 207, at 4 (stating that an offset would be "equitable" and awarding liquidated damages "manifestly unjust").] Liquidated damages, however, are not punitive. As the Supreme Court of the United States explained:

> [T]he liquidated damage provision is **not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages**. It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" and to the free flow of commerce, **that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being**. Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707–08 (1945) (emphasis added) (footnotes omitted) (citation omitted). Congress directed the federal courts to make awards of liquidated damages as compensation for employees' injuries.

Next, Defendants' motion requests that this Court award Plaintiffs only partial liquidated damages. [Doc. 207, at 4.] But binding and longstanding precedent from the Eleventh Circuit precludes the Court from doing so absent an explicit finding of Defendants' good faith: "[T]he district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving

3

good faith.  In other words, liquidated damages are **mandatory absent a showing of good faith**."  *Joiner v. Macon*, 814 F.2d 1537, 1540 (11th Cir. 1987) (emphasis added).  This Court has not made a finding of Defendants' good faith, and as mentioned above, the Court cannot do so where the jury found that Defendants willfully violated the FLSA.  *Alvarez-Perez*, 515 F.3d at 1166.

Binding precedent mandates liquidated damages and does not provide the court discretion to award only partial liquidated damages when, as here, the jury finds a willful violation of the FLSA.  The pre-requisite finding to award partial liquidated damages—the Defendants' good faith—is precluded by the jury's willfulness finding.  The Act and binding precedent, therefore, require that the Court award $30,849.28 as liquidated damages.

## II.   This Court should not offset Plaintiffs' damages.

At the final pretrial conference, the concept of a potential offset was discussed in the context of resolving dueling motions *in limine* surrounding the DOL's investigation.  Plaintiffs' counsel was agreeable to some sort of offset, provided that it did not prejudice the Plaintiffs' right to collect the entire judgment.  Plaintiffs' counsel understood that the benefit of attempting to agree about an offset after the judgment was that the Defendants would not seek to introduce the DOL payments as evidence during the trial, but rather would address the payments with the Court after the jury's verdict.

During the trial, the Court permitted Defendants to introduce the DOL amounts for each specific Plaintiff into evidence; permitted Defendant Matt Shipp to testify about those amounts repeatedly; permitted counsel for Defendants to argue that Plaintiffs should have

4

collected their money from the DOL rather than filing this lawsuit; and permitted Defendants to argue or to insinuate that the money was still available to Plaintiffs at the DOL.  Indeed, the primary thrust of Defendants' case was that they were investigated by the DOL and had already paid the money that the DOL said Defendants owed to Plaintiffs.

Even though Plaintiffs contended then and maintain now that the introduction at trial of the amounts that Defendants allege they paid to the DOL for some Plaintiffs ("DOL amounts") prejudiced Plaintiffs and that Plaintiffs did not receive the benefit of excluding this prejudicial evidence at trial, Plaintiffs' counsel still entertained the concept of permitting an offset.  Plaintiffs' counsel entertained agreeing to an offset only if:  (1) the offset would only apply if the DOL amounts covered the same period and the same claims as the jury verdict; (2) Plaintiffs could obtain their money from the DOL now; and (3) Plaintiffs could accept money from the DOL without prejudicing their trial or appeal rights. Absent these conditions, allowing an offset would unduly prejudice Plaintiffs' substantive FLSA rights.

Defendants have never provided to Plaintiffs or this Court information concerning precisely for what period or precisely for what claims the DOL assessed back wages during its investigation.  The period of the DOL investigation and Plaintiffs' recovery period have some overlap, but they are not identical.  And the rationale the DOL used to determine that Defendants owed Plaintiffs back wages is unknown to Plaintiffs.  It is therefore impossible to determine whether the DOL amounts cover the same period or relate to the same claims Plaintiffs won at trial.

Additionally, upon investigating a way to agree to an offset, Plaintiffs' counsel has determined that there is no way Plaintiffs can accept money from the DOL without prejudicing their appellate rights and that if Plaintiffs exercise their rights to appeal, there is no way the money will be available to them. Further, upon consideration of the jury's verdict, the evidence presented the jury, and the argument of counsel, it is highly likely that the jury has already considered that Plaintiffs would be entitled to the money from the DOL in addition to the jury's verdict amounts. That is, the amount paid to the DOL is already factored into the jury's specific damage awards for each Plaintiff.

### A. Plaintiffs did not accept money from the DOL to preserve their rights to liquidated damages, trial, and appeal.

Plaintiffs—victims of willful wage theft by their employer—chose not to accept money from the DOL in order to enforce their rights under the FLSA in federal court. The DOL settlement only provided recovery of unpaid wages for a two-year period without liquidated damages. By pressing their claims at trial, however, Plaintiffs proved that Defendants willfully violated the FLSA, entitling them to liquidated damages; made a recovery for certain individuals for uncompensated work that occurred before and after the period covered by the DOL investigation; recovered damages for uniforms not included in the DOL amounts; and preserved other rights.

One of the rights Plaintiffs preserved by not accepting money from the DOL is the right to collect liquidated damages from Defendants, which Plaintiffs would have waived had they participated in the DOL settlement process. 29 U.S.C. § 216(c) ("[T]he agreement of any employee to accept . . . payment [supervised by the DOL] shall upon payment in

6

full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages."). As discussed above, this Court accordingly should reject Defendants' argument that it would be "equitable" not to award Plaintiffs liquidated damages on the amounts that Defendants contend they paid to the DOL. [Doc. 207, at 4.] Instead, it is both equitable and mandatory for this Court to award Plaintiffs the liquidated damages to which they are entitled under the FLSA. *Alvarez-Perez*, 515 F.3d at 1166; *Joiner*, 814 F.2d at 1540.

Another right Plaintiffs preserved by rejecting money from the DOL is the right to an appeal after a verdict in federal court. FLSA § 216(c) requires Plaintiffs to waive their rights under § 216(b) if they accept money from the DOL. 29 U.S.C. § 216(c). One of Plaintiffs' conditions to agreeing to an offset is therefore precluded by the FLSA.[1] If this Court ordered an offset and directed Plaintiffs to collect their money from the DOL, the Court would create a catch-22 for Plaintiffs: Either follow the Court's order, collect the DOL money now, and give up their rights to appeal; or defy the Court's order and subject themselves to possible contempt of court while not receiving all the damages the jury awarded them. This Court should not put Plaintiffs in such a position solely to benefit Defendants, whom the jury found to be scofflaws.

---

1. Plaintiffs' counsel did not realize this at the final pretrial conference or when discussing an offset with opposing counsel following the trial.

### B. An offset would punish Plaintiffs for exercising their appeal rights, and Defendants have already received the benefit of their DOL settlement.

The DOL only holds monies for 3 years after they are paid. U.S. Dep't of Labor, "Workers Owed Wages," *available at* https://webapps.dol.gov/wow/ ("If we cannot find an employee, we hold their back wages for three years while we continue our efforts to locate them."). Defendants paid the DOL amounts to the agency in either late September or early October of 2017. [Tr. Ex. 76, at 1 (directing Defendants to submit evidence of payment to the DOL within 10 days of September 27, 2017).] The DOL accordingly will only hold Plaintiffs' monies until approximately October 1, 2020, before turning those funds over to the U.S. Treasury. If Plaintiffs choose to appeal after this Court rules on attorneys' fees, there is little chance that the Eleventh Circuit would decide even an expedited appeal by October 1 of this year.

Plaintiffs chose not to participate in the DOL settlement. Defendants knew that all their employees subject to the DOL investigation need not accept the settlement when the Defendants decided to pay money to the DOL. They assumed the risk that they may face litigation even after the DOL settlement, but Defendants decided to move forward with the settlement anyway. Defendants have received the full benefit of their settlement bargain with the DOL. It is no surprise that some Plaintiffs would choose to pursue their rights in federal court.

The argument that a full recovery for Plaintiffs somehow prejudices Defendants is based entirely on viewing the DOL settlement without considering what Defendants knew when they entered the agreement. Defendants, knowing the full facts, decided to enter a

8

settlement under specific terms with the DOL.  One of those terms was that any money not accepted by Defendants' employees would revert to the U.S. Treasury.  Another condition of the settlement was that the employees could reject the settlement and pursue their claims.  Defendants should have negotiated with the DOL that if any current or former employee pursued her rights in court that the DOL would refund the money to Defendants.  They did not.  This Court should not prejudice Plaintiffs to help scofflaw Defendants renegotiate the terms of their settlement with the DOL.

### C. It is more likely that the jury already discounted Plaintiffs' damages to account for the DOL amounts than that the jury awarded Plaintiffs a double recovery.

Defendants presented evidence of damage payments made to the DOL that were earmarked for Plaintiffs.  Defendants' main theme at trial was as follows: The DOL determined damages; Defendants paid those damages; and all Plaintiffs had to do was cash the DOL check.  The Court permitted Defendants to present such evidence and argument over Plaintiffs' objections.  The jury therefore knew about Defendants' payment to the DOL and the specific DOL amounts for which Defendants want an offset and still found that Defendants willfully violated the Act and awarded damages to Plaintiffs.  Although impossible to know with certainty, it is more likely that the jury already discounted Plaintiffs' damages awards by the DOL amounts than that the jury awarded Plaintiffs a double recovery.

If—as Plaintiffs urged—this Court had excluded evidence of the DOL amounts at trial, then Defendants might have a stronger argument in favor of an offset. Where the jury considered the DOL amounts, however, it is not appropriate for Defendants or this Court

9

to assume that the jury awarded Plaintiffs a "double recovery" for the DOL amounts. [*See id.* at 4]; *see also Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 898 (11th Cir. 2011) (citing *United States v. Lopez*, 649 F.3d 1222, 1237 (11th Cir. 2011)) (stating that federal courts presume juries follow their instructions). This Court should not permit Defendants to create—over Plaintiffs' objections—the scenario that Defendants now contend is unfair and to assume that the jury acted inconsistently with all the evidence presented at trial and the Court's instructions on damages. Where the jury's damages awards do not match the amounts requested by Plaintiffs, however, it is **more plausible** to assume that the jury applied Defendants' theories and discounted some portion of the DOL amounts from Plaintiffs' damages than that the jury awarded Plaintiffs a double recovery.

> **D. Defendants have not demonstrated to this Court that the DOL still has the funds at issue or explained how Plaintiffs could practically claim the DOL amounts.**

Defendants assert without support that the DOL is holding the DOL amounts for Plaintiffs. [Doc. 207, at 1–2.] This Court should not assume the DOL is holding funds for Plaintiffs without evidence of that fact.

Since the trial concluded, counsel for Plaintiffs has contacted the Mobile office of the DOL on multiple occasions to inquire about the money Defendants contend that they paid to the DOL and whether counsel could obtain and distribute those funds to Plaintiffs. [Ex. 1, Teeples Decl.] Although the Assistant District Director ("ADD") has spoken to Plaintiffs' counsel on more than one occasion and has made internal inquiries about the DOL amounts, the DOL has not yet confirmed to Plaintiffs' counsel either that Defendants

10

paid the specific amounts Defendants included in their motion or that the DOL is holding those funds for Plaintiffs. [*Id.* at ¶¶ 3–10.]

Even if the DOL has funds for Plaintiffs, the ADD has explained that the agency will not release them to Plaintiffs' counsel. Rather, the ADD explained that the individual Plaintiffs must directly and separately claim their funds from the DOL. [*Id.* at ¶ 12.] It therefore does not appear that there exists a systematic way this Court could order Defendants' requested offset and could ensure that Plaintiffs receive all the damages that the jury awarded. This practical problem alone justifies denying Defendants' motion.

This Court should deny Defendants' motion for an offset. It is inappropriate to assume the jury awarded Plaintiffs a "double recovery" where the jury considered the DOL amounts, and Defendants have neither demonstrated to the Court that the DOL is holding funds for Plaintiffs nor proposed a workable procedure for distributing to Plaintiffs any funds the DOL might be holding. At minimum, this Court should award full liquidated damages to Plaintiffs and defer ruling on Defendants' motion until Defendants (1) demonstrate that DOL amounts overlap with the period and claims for which the jury awarded damages, (2) present actual evidence that the DOL has the funds Defendants allege, and (3) explain how Plaintiffs can either claim the DOL amounts now without forfeiting their rights to appeal or that the DOL amounts will still be available after Plaintiffs exhaust their appeal rights.

## CONCLUSION

The unambiguous language of the FLSA and binding Eleventh Circuit precedent require this Court to award liquidated damages to Plaintiffs. And Defendants have not

11

demonstrated to this Court that they should be entitled to an offset for the DOL amounts. This Court accordingly should grant Plaintiffs' motion and deny Defendants' motion.

Date: February 7, 2020

Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com

Daniel Eduardo Arciniegas
ARCINIEGAS LAW, PLLC
P.O. Box 682344
Franklin, TN 37068
Tel.: (629) 777-5339
Fax: (615) 988-9113
daniel@attorneydaniel.com

Abby M. Richardson
RICHARDSON LAW FIRM, LLC
118 North Royal Street, Suite 100
Mobile, AL 36602
Tel.: (251) 338-1695
Fax: (251) 338-1698
abby@richardsonlawllc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I filed a true and correct copy of this document via the Court's CM/ECF system, which sent electronic notice to the following counsel of record:

C. Randall Caldwell, Jr.
CALDWELL WENZEL & ASTHANA, PC
218 N. Alston Street
Foley, AL 36535
Tel.: (251) 948-2168
Fax: (251) 948-2938
rcaldwell@caldwellwenzel.com

*Attorney for Defendants*

                                        /s/ *Charles P. Yezbak, III*
                                        Charles P. Yezbak, III