**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **APRIL R. NAIL,** *et al.*, | ) | |
|      **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 17-00195-KD-B** |
| | ) | |
| **ROBERT M. SHIPP,** *et al.*, | ) | |
|      **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Plaintiffs' motion for attorneys' fees and costs (Docs. 211, 212), Defendants' response (Doc. 215), and Plaintiffs' Reply (Doc. 217).

This is an FLSA collective action, which was tried by jury resulting in a December 10, 2019 jury verdict in the amount of **$30,849.28** (including the stipulated **$6,198.00** for expense shifting damages) in favor of Plaintiffs on *certain* of their claims.  Specifically, the jury concluded: 1) Defendants shifted expenses to Plaintiffs for wine keys (the Court has already concluded such occurred for aprons and uniform shirts); 2) Defendants had a pattern or practice of improperly eliminating hours they worked from time records before paying them; 3) Defendants had a pattern or practice of paying overtime for hours over 80 in a work period instead of computing overtime for hours worked over 40 in a workweek; and 4) Defendants knew or showed reckless disregard for whether the FLSA prohibited the conduct. (Doc. 198-1 (verdict)).

Per 29 U.S.C. § 216(b:) "...The court…shall, in addition to any judgment awarded to the plaintiff…allow a **reasonable** attorney's fee to be paid by the defendant, and costs of the action." Plaintiffs now move for a total award **$900,031.31,** comprised of attorneys' fees in the amount of **$839,183.23** and costs in the amount of **$60,848.08**, as reasonably incurred in this case.

Specifically, Plaintiffs' counsel seeks attorneys' fees and costs incurred for **2,189.35 hours** billed by **five (5) attorneys** at **three (3) law firms (Charles Yezbak, Abby Richardson, Daniel Arciniegas, Chase Teeples, and Matthew Doster),** and **six (6) paralegals**. (Docs. 211, 212 (SEALED)).   In support, Plaintiffs' counsel submits sealed billing records, an itemized costs statement, their own Declarations (Doc. 211-1 (Charles P. Yezbak III), Doc. 211-2 (Daniel Arciniegas), Doc. 211-3 (Abby Richardson); Declarations of Mobile, Alabama attorneys Henry Brewster (Doc. 211-4) (attesting as reasonable $350/hour for Yezbak, $325/hour for Arciniegas, $325/hour for Richardson, and $250/hour for Teeples), and Celia Collins (Doc. 211-5) (attesting as reasonable $350/hour for Yezbak, $325/hour for Arciniegas, $325/hour for Richardson, and $250/hour for Teeples, for the relevant Mobile, AL market); and Declarations of Tennessee attorneys Douglas B. Janney III (Doc. 211-6), W. Michael Hamilton (Doc. 211-7), C. Andrew Head (Doc. 211-8), and Christopher L. Howard (Doc. 211-9) (attesting to the reasonableness of Plaintiffs' counsel's requested hourly rates for the Nashville, TN market).

## I.    <u>Attorneys' Fees</u>

The FLSA provides that the "court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." <u>29 U.S.C. § 216(b)</u>. In the collective FLSA action context, as applies in this case, a court must also assess the reasonableness of attorneys' fees to "minimize conflicts that 'may arise between the attorney and the class." <u>Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980)</u>.   When assessing reasonableness, courts rely on the lodestar method for determining the reasonableness of the fees sought. <u>Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 Fed. Appx. 684 (11th Cir. 2011)</u>; <u>Perez v. Carey Int'l, Inc., 373 Fed. Appx. 907 (11th Cir. 2010)</u>;

Norman v. Alorica, Inc., 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012); Wolff v. Royal Am. Mgt., Inc., 2012 WL 5303665 (S.D. Ala. Oct. 25, 2012). Under the lodestar, courts multiply the number of hours reasonably expended by a reasonable hourly rate for similar legal services. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1147, 1150 (11th Cir. 1993). "Adjustments to that fee then may be made as necessary in the particular case." Blum v. Stenson, 465 U.S. 886, 888 (1984).[1]

Regardless of who is doing the billing, courts may only award fees for time spent by attorneys, or for the work of non-lawyer paralegals *but only to the extent they perform work "traditionally done by an attorney"*[] -- i.e., no fees for overhead (secretarial/administrative tasks). See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 at note 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them[ ]"); Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 54, 2015) ("excessive, redundant, or otherwise unnecessary" fees are not recoverable); SE Prop. Holdings, LLC v. 145, LLC, 2012 WL 6681784, *4-5 (S.D. Ala. Dec. 21, 2012) (allowing recovery of traditional attorney-work but not clerical work). See also Brown v. Lambert's Cafe III, 2016 WL 325131, *6,

---

1 Norman v. Hous. Auth. of the City of Montg., 836 F.2d 1292 (11th Cir. 1988). Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended. Hensley, 461 U.S. at 434. Even when a party prevails, the district court still must determine whether time was reasonably expended, and if it was not, that time should be excluded from the fee calculation. Id. While the "lodestar" method effectively replaced the balancing test in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount." Norman v. Hous. Auth. of the City of Montg., 836 F.2d 1292 (11th Cir. 1988). The factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases. Johnson, 488 F.2d at 717-719.

n. 4 (S.D. Ala. Jan. 27, 2016) (clerical tasks are not recoverable). "Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions." Cormier v. ACAC Inc., 2013 WL 6499703, *5 (S.D. Ala. Dec. 11, 2013). See also Whitney Bank v. Davis–Jeffries–Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (time spent by paralegals "receiving, reviewing, and indexing documents," "sending or receiving emails with documents attached," "preparing the civil cover sheet and summons," "receiving and indexing certified mail receipts," and "e-filing documents with the Court and receiving and indexing those documents" was not compensable time for the purposes of the fee petition); Johnson v. TMI Mgmt. Sys., Inc., 2012 WL 4435304, *5 (S.D. Ala. Sept. 26, 2012) (finding "telephone call to client re: scheduling appointment," "receipt and download of order," and "review of the Court's Order ..." non-compensable). As detailed in in Ford v. Navika Capital Grp., LLC, 2017 WL 1381668, *3-4 (S.D. Ala. Apr. 17, 2017) (internal citations omitted):

> Such non-recoverable tasks include time billed for: setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc…[FN4]...
>
>> [FN4] ….(clerical tasks such as "Review Summons Issued," "Call to Clerk to confirm Summons were sent to Marshall for service," "Download/Combine and OCR Transcript, live bookmark," and "Download, file and save Corrected transcript in parts," are not compensable as attorney fees);….(downloading, scanning or saving files or docket entries not recoverable); …..(an attorney in an FLSA case should not be permitted to recover fees for clerical time for e-filing, on line research of addresses, preparing civil cover sheets and summonses and for reviewing the CM/ECF email for documents prepared and filed by counsel).

4

... The billing records include numerous entries for such tasks (…."receive settlement agreement and W9 form signed from client: scan to file and save,"…."re-scan settlement agreements into S drive for clients", …"further preparation of documents for client correspondence", …"conference with counsel regarding strategy on service affidavits," …"compilation of correspondence and pleadings regarding all parties in lawsuit,"… "analysis of scheduling order/docket.."…. "save supplemental report regarding settlement to S drive," "Operation of Spreadsheet ...", etc….. The non-recoverability for clerical tasks may also be applicable to those entries labeled "Assistance with...." ….

## A. <u>Reasonable Rate</u>[2]

As the party requesting fees, Plaintiffs bear the burden of supplying specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citing Norman, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[ ]'"). Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Moreover, this Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney

---

2 The rates awarded are specific to the unique nature of this case and to the legal professionals litigating before the Court, and thus, are not intended to be applied unilaterally to future attorneys' fees requests in other cases.

seeking an award of fees. Langford v. Hale Cty. Ala. Comm'n, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

Plaintiffs seek the following rates *based on the Nashville, TN market*: $560/hour for Yezbak, $450/hour for Arciniegas, $350/hour for Teeples, $275/hour for Doster, and $175/hour for six (6) paralegals.  (Doc. 211 at 9-11; Doc. 211-1 (Decltn. Yezbak)).  Counsel asserts that the rates are reasonable and charged by attorneys in Nashville, TN -- the market which he asserts should be used due to the lack of FLSA attorneys in Mobile, Alabama.  *In the alternative,* Plaintiffs request the following Mobile, AL market rates as reasonable: $350/hour for Yezbak, $325/hour for Arciniegas, $325 for Richardson, $250/hour for Teeples, $200/hour for Doster, and $90/hour for paralegals.  (Doc. 211 at 11, 13). The relevant market rate is Mobile, Alabama, not TN, and not Nashville, TN specifically, as counsel suggests.  The Court's experience indicates there is not a lack of attorneys in the local area (including co-counsel in this case) willing to take FLSA cases of merit.

In FLSA cases, the undersigned has found $250/hour to be a reasonable hourly rate for an attorney with 19 years and with 28 years of experience, and $225/hour to be reasonable for 14 years of experience. Criswell v. Mobile Housing Bd., Civil Action 14-00047-KD-N (S.D. Ala. Aug. 3, 2016) (Doc. 99). See also e.g., Smith v. Cmty. Loans of Am., Inc., 2013 WL 372113, *7 (S.D. Ala. Jan. 30, 2013) (awarding $250/hour for an attorney with 15 years of experience); McCants v. Fred's of Tenn., Inc., 2013 WL 172900, *4 (S.D. Ala. Jan. 16, 2013) (awarding $250/hour for an attorney with 11 years of experience in employment litigation); Higdon v. Critter Control of the Gulf Coast, LLC, 2013 WL 673462, *5 (S.D. Ala. Feb. 25, 2013) (awarding $250/hour to counsel who had been practicing since 1989); Goldsby v. Renosol Seating, LLC,

2013 WL 6535253, *9 (S.D. Ala. Dec. 13, 2013) (finding $250-$300/hour reasonable "for more experienced and qualified attorneys[ ]"); Decorative Components Incorporated, Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (recognizing that $250-$350/hour was reasonable for "top Mobile lawyers in complex cases" and $250/hour "for an attorney with 15 years of experience as a law firm partner[ ]"). However, this Court has recently found reasonable, *specifically as to Plaintiffs' counsel*, rates of $350/hour for Yezbak, $325/hour for Arciniegas, and $250/hour for Teeples. Fitzwater v. Cole, 2020 WL 620670, *2 at note 2 (S.D. Ala. Feb. 10, 2020).   Additionally, the Declarations of Mobile counsel Brewster and Collins support these rates -- as well as the requested rate of $325/hour for Richardson (Doc. 211 at 13) -- for the Mobile, AL market.  Upon consideration, the Court finds as reasonable, for this case, the following hourly rates: **Yezbak (25 years) $350/hour; Richardson (14 years) $325/hour; Arciniegas (12 years) $325/hour; and Teeples (6 years) $250/hour.**  (Doc. 211 at 9-11).

Concerning **Doster (3-4 years),** the Court has previously determined $150/hour to be a reasonable rate for counsel with 1-3 years of experience, and $185-200/hour to be reasonable for counsel with 4-7 years of experience.  Adams v. Austal, U.S.A., L.L.C., 2010 WL 2496396, *6 (S.D. Ala. June 16, 2010) (finding $150/hour to be a reasonable rate for third-year associate); See, also e.g., Cardinal Health 108, LLC v. Hemacare Plus, Inc., 2017 WL 114405, *14 (S.D. Ala. Jan. 11, 2017) (finding $200/hour a reasonable rate for an attorney with six (6) years of experience); Garrett Invest., LLC v. SE Prop. Holdings LLC, 956 F.Supp.2d 1330, 1341 (S.D. Ala. 2013) (awarding $190/hour to an associate with six (6) years of experience); Decorative Components, 2012 WL 5398800 at *5-6 (finding $200/hour was reasonable for an attorney with seven (7) years of experience); Gulf Coast Asphalt Co., L.L.C. v. Chevron U.S.A., Inc., 2011 WL 612737, 3-4

(S.D. Ala. Feb. 11, 2011) (same).  Additionally, in Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 4, 2015), this Court awarded $185/hour as reasonable for an attorney with four (4) years of experience).  Upon consideration, the Court finds that the reasonable rate for Doster, with 3-4 years of experience, for this case, is **175/hour**.

Concerning the **six (6) paralegals**, Plaintiffs' counsel request $175/hour under the Nashville market rate (Doc. 211 at 10-11), but in the alternative, $90/hour for the Mobile market. This Court has found $75/hour to be reasonable for paralegals.  PNC Bank v. Classic Crab, Inc., 2016 WL 4257360, *5 (S.D. Ala. Aug. 11, 2016) (listing cases); Denny Mfg., 2011 WL 2180358, *5; Zuffa, LLC v. Al-Shaikh, 2011 WL 1539878, *9 (S.D. Ala. Apr. 21, 2011); Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, *5 (S.D. Ala. Feb. 3, 2011). Upon consideration, the reasonable rate for paralegals for this case (*but only for that work performed that is traditionally done by an attorney* as noted *supra*), is **$75/hour.**

B.     **Reasonable Hours**

Plaintiffs' counsel requests as reasonable an award of **2,189.35 hours** for the work of 5 attorneys, and six (6) paralegals, as reasonably and necessarily performed to work on this case. Specifically, Plaintiffs seek for Yezbak 1,1736.60 hours (having already reduced them by 139.80 hours or 8.05%) (Doc. 211-1 at 5-6 (Decltn. Yezbak)) as follows: 1) for counsel -- 389.20 for Yezbak, 644.70 for Teeples, 187.00 for Arciniegas (when employed at Yezbak law firm), and 84.50 for Doster; and 2) for paralegals -- 6.40 for Jada Flowers, 8.90 for Josephine Sanchez, 18.50 for Rain Xue, 13.10 for Stacy Boyette, and 244.50 for Valerie Jephson. (Id.) Additionally, Yezbak attests to Richardson's 245.6 billed hours (totaling $63,683.75), as she already reduced them by 49.65 hours (20.22%), adding that her "contributions were invaluable[,]" and that she defended

depositions, headed the jury selection process, prepared witnesses for trial, was instrumental in trial strategy, etc. (Doc. 211-1 at 7-8 (Decltn. Yazbak).  See also Doc. 211-3 (Decltn. Richardson)). Notably, while Richardson used a paralegal, she has not requested to recover the hours billed for paralegal work, though "considerable." (Doc. 211-3 at 4 (Decltn. Richardson)). Moreover, Yezbak attests to Arciniegas' 378.6 billed hours (once at his solo law firm) plus 18 hours for his paralegal (totaling $173,520), as he already reduced his hours by 4.1% and those of his paralegal by 14.69%, because he handled most of the client contact, coordinated discovery and strategy, and was the case point person.  (Doc. 211-1 at 8 (Decltn. Yazbak).  See also Doc. 211-2 (Decltn. Arciniegas)). Further, per Yezbak, counsel have already all reduced their overall billed hours by 8.71%.  (Id.)

In determining whether the number of hours expended are reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. "**Courts are not authorized to be generous with the money of others**, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428 (emphasis added).  The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted).

While there is no *per se* rule of proportionality, City of Riverside v. Rivera, 477 U.S. 561, 573-574 (1986), **"[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded**.... It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." Id. at 573 (emphasis added).  As

expressed by this Court in *Wolff v. Royal Am. Mgmt., Inc.*, 2012 WL 5303665, *5 (S.D. Ala. Oct. 25, 2012)*, aff'd*, 545 Fed. Appx. 791 (11th Cir. 2013):

> [I]n light of the gross disparity between what plaintiff claimed and what her attorneys now seek for obtaining the recovery, there is significant potential for the fee award to become a windfall for plaintiff's counsel. FLSA suits are not meant to become a cottage industry divorced from the benefits they provide, and the fees should not shade over from fair play into a punitive measure against defendants who challenge a plaintiff's overtime claim in good faith. The court considers these factors in determining the reduction to be applied to the fees requested in this action.

A court "has discretion to reduce an award to account for situations where the lodestar figure is unreasonable in light of the limited success obtained." *Martinez v. Hernando County Sheriff's Off.*, 579 Fed. Appx. 710, 715 (11th Cir. 2014). See also, e.g., Goss v. Killian Oaks House of Learning, 248 F.Supp.2d 1162, 1168 (S.D. Fla. 2003) (denying fees as counsel "seem[ed] to have leveraged a small sum as a stepping-stone to a disproportionately large award" by seeking $16,000 for a $315.89 FLSA claim). *Cf. P&K Rest. Enter., LLC v. Jackson*, 758 Fed. Appx. 844, 850-851 (11th Cir. 2019) (a jury awarded a plaintiff $6,308 and the district court awarded $188,894.20 in fees, which was affirmed).

Additionally, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. Hensley, 461 U.S. at 433-434. See also e.g., Norman, 836 F.2d at 1299, 1303 ("[t]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment[ ]") (citations omitted); Barnes, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary[ ]"); Jean v. Nelson, 863 F.2d 759,

772-777 (11th Cir. 1988) (discussing the reasonableness of the hours expended in light of the contention that the fee requests were not supported by sufficient documentation and involved duplication of efforts).

Moreover, when a request for attorney's fees is unreasonably high, the court may *either* "conduct an hour-by-hour analysis *or* it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (emphasis added). On occasion, "an hour-by-hour review is simply impractical and a waste of judicial resources." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). In such instances "where the fee motion and supporting documents are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction," id., and the court may reduce the hours sought with an across-the-board reduction. See, e.g., Padurjan v. Aventura Limousine & Transp. Service, Inc., 441 Fed. Appx. 684, 687 (11th Cir. 2011) (50% reduction); Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (25% reduction); *Martinez*, 579 Fed. App'x at 715 (75% reduction, as plaintiff recovered 1.8% of the amount sought); d'Amico Dry d.a.c. v. Nikka Finance, Inc., 2019 WL 2995922 (S.D. Ala. Jul. 9, 2019) (65% reduction (non-FLSA)); Vasconcelo v. Miami Auto Max, Inc., 2019 WL 275946 (S.D. Fla. Jan. 22, 2019) (63% reduction in light of limited success); *Jimenez v. Borman*, 2017 WL 5508382, *1 (S.D. Fla. Nov. 15, 2017) ($58,132 in fees for a $4,824.00 FLSA judgment was "exorbitant," reducing 75%); *Woods v. On Baldwin Pond, LLC*, 2016 WL 7325546, *9 (M.D. Fla. Apr. 29, 2016) (90% reduction to fees in an FLSA case); Whitney Bank v. Davis-Jeffries-Hunold, Inc., 2012 WL 5470131, *7 (S.D. Ala. Nov. 9, 2012) (50% reduction); Alorica, 2012 WL 5452196, *7 (50% fee reduction); *Zelaya v. Pak United, Inc.*, 2011 WL 13174409, *3 (S.D. Fla. Feb. 22, 2011) (75% reduction, noting the "vast disparity"

between plaintiff's $30,000 claim and the $1,063.75 recovered); *Roldan v. Pure Air Sols., Inc.*, 07-22203CIVTORRES, 2010 WL 410571, at *7 (S.D. Fla. Jan. 29, 2010) (85% reduction for an plaintiff who recovered $533.69); Western Sur. Co. v. Bradford Elec. Co., Inc., 483 F.Supp.2d 1114, 1121 (N.D. Ala. 2007) (1/3 reduction); United States v. Adkinson, 256 F.Supp.2d 1297, 1316 (S.D. Fla. 2003) (20% reduction for excessive billing).[3]

Further, as the Eleventh Circuit explained in <u>Norman</u>, "[r]edundant hours generally occur where more than one attorney represents a client." 836 F.2d at 1301–1302. While "[t]here is nothing inherently unreasonable about a client having multiple attorneys...they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1301–1302.

Currently before the Court is over 800 pages of briefing, billing records, declarations and other materials, relating to **$900,031.31** in fees and costs requested by Plaintiffs' counsel for a **$30,849.28** FLSA collective action jury verdict.  The Court is very familiar with the case and understands the number of pre/post-trial motions, as well as the FLSA issues raised pre-trial, during trial, and post-trial. Additionally, the Court has considered Plaintiffs' position -- that they overcame a revolving door of opposing counsel and a no-holds barred defense[,]" to obtain the first plaintiff jury verdict in an FLSA collective action in the S.D. Ala.  (Doc. 211 at 1-2, 5).

Moreover, the Court notes that Plaintiffs characterize the jury as awarding more than 250% of the back wages the DOL assessed against Defendants and that if the mandatory liquidated

---

3 <u>See</u>, <u>also</u> e.g., <u>Cox.</u> *v. Brookshire Grocery,* 919 F.2d 354, 358 (5th Cir. 1990) (affirming cut from 300 to 80 hours to award $9,250 in fees for a $1,181 judgment); <u>Grule v. Land Guardian, Inc</u>., 2017 WL 6761821, *8 (S.D. Tex. Oct. 24, 2017) (60% reduction); *Hilton v. Executive Self Storage Assoc., Inc.,* 2009 WL 1750121, at *14-16 (S.D. Tex. June 18, 2009) (67% reduction, trial judgment was 1% of the amount sought).

damages are awarded, the total recovery will be more than 500% of what the DOL collected.  (Id.

at 1-2).  However, the Defendants more accurately characterize the results of Plaintiffs' counsel,

and the amount of fees requested, as follows:

> Plaintiffs' entire verdict.... totaled $30,849.28. The Department of Labor had
> previously determined that 33 of the Plaintiffs were entitled to
> $12,039.87.....Plaintiffs' efforts only netted $18,809.41 in additional recovery .....
> and that includes the additional 44 Plaintiffs (there were 77 total) and all of the
> additional time period beyond the scope of the DOL investigation.....even with the
> additional time, the jury still found that 29 of the 77 Plaintiffs were not entitled to
> any damages for minimum wage violations. Similarly, the jury found that 13 of the
> 77 Plaintiffs were not entitled to any overtime wages. Of the 33 Plaintiffs
> previously covered by the Department of Labor's investigation, 7 of them were
> awarded less money by the jury than what was determined by the Department of
> Labor...
> 
> ***
> 
> ....Plaintiffs failed to mention they lost 1) Tip Credit Notice Requirements, 2)
> Expense Shifting on Laundry, Pens, Lighters, and Wine Keys, and 3) Dual Jobs or
> Excessive Non-Tip Generating Duties. It is fair to say that Plaintiffs lost far more
> of the case than they won. Well over 50% of Plaintiffs' counsels' time was spent
> on aspects of the case where Plaintiffs did not prevail. In fact, the only areas
> Plaintiffs prevailed were work hours and overtime pay, which the Department of
> Labor had already found for Plaintiffs, and shirts and aprons which had already
> been granted by the Department of Labor and this Honorable Court respectively
> before trial. Furthermore, the Plaintiffs' contention that they were awarded more
> than 250% of the back wages assessed by the Department of Labor is misleading.
> The time frame covered by the jury's verdict significantly exceeded the time frame
> covered by the Department of Labor investigation. The Plaintiffs reliance on it is
> an apples v. oranges argument.

(Doc. 215 at 4-5).

Further, the undersigned has considered counsel's assertions that: 1) they exercised billing

judgment (Yezbak eliminating 139.8 hours, frequently not billing for conference time to

delegate/assign work, not billing for travel time, emails, phone conferences with co-counsel, and

that Richardson did similarly (Doc. 211 at 14)); 2) they staffed the case efficiently by having

Teeples ("the least experienced attorney with the lowest hourly rate perform as much of the

13

work...as possible"), and sending one attorney and no staff to each of the 19 depositions (Id. at 14-15); 3) they endeavored to prevent redundancies across law firms representing plaintiffs (Id. at 15-17); 4) that defendants' litigation conduct was one of the major contributors to the hours billed (e.g., defendants' production of 20,000 pages of unsorted, non-Bates stamped and duplicative documents, plaintiffs' counsel preparing the "overwhelming majority" of the parties' "joint" pretrial document (Id. at 17)); and 5) extraordinary effort was utilized to shepherd a complex federal case from investigation to judgment (Id.)  See also Doc. 211-1 (Decltn. Yezbak); Doc. 211-2 (Decltn. Arciniegas); Doc. 211-3 (Decltn. Richardson)). Finally, the Court acknowledges Plaintiffs' description of their "efficient" use of five (5) attorneys and six (6) paralegals among three (3) separate small law firms, to litigate this case.  And in reply to Defendants' opposition, Plaintiffs emphasize that their prosecution of "Defendants' willful statutory violations will deter Defendants and other[s]...from shaving hours and shifting business expenses to their employees in violation of the FLSA's minimum wage requirement."  (Doc. 217 at 3).

Nevertheless, even after careful consideration of the foregoing, the Court cannot accept as reasonable the _entire_ **2,189.35 hours** requested, finding that a **50% across-the board reduction** to the hours requested is warranted.

**First**, the use of 5 different attorneys at 3 different law firms, including 3 for trial, as well as six (6) paralegals, appears **excessive and unnecessary**.  While this was the first FLSA collective action to reach a jury trial in the Southern District of Alabama, the FLSA issues were not so unique or complex to prompt a 5-counsel plus 6-paralegal (11 member) team, whether 1 or 77 plaintiffs. Plaintiffs' motion (and submissions) also do not adequately explain the need for so many attorneys and paralegals to be involved.  **In contrast, during the majority of discovery, motion practice,**

**preparation for trial and trial, the defense was more than adequately represented by only one attorney.**

Plaintiffs' motion and declarations attest to extensive FLSA expertise, particularly by Yezbak, suggesting at least some of the four (4) other attorneys were duplicative. As to the paralegals, the Court has no information or explanation as to why six (6) were required (and that does not even include Richardson's paralegal, for which she has not sought compensation). Additionally, the Court's review of the billing records does not satisfactorily confirm that the work the multiple attorneys performed *consistently* constituted *distinct* contributions. d'Amico., 2019 WL 2995922 at *6-7.  At most, Arciniegas references in his Declaration that he was "'responsible for handling certain paper discovery and taking depositions[]" whereas "Teeples was primarily responsible for drafting filings," but adds "each attorney may review certain arguments to ensure consistence with their particularized aspect of the case." (Doc. 211-2 at 10 (Decltn. Arciniegas)). However, the billing entries are not so clear.  And, "[r]edundant billing is a not incidental result of staffing this matter with so many lawyers. While the Court cannot determine with exactitude whether redundant billing occurred due to the redactions, it can be safely inferred."  d'Amico. at *6.  Similarly, "[w]ith so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings." Lee v. Krystal Co., 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013). Indeed, a review of the billing records reflects a multitude of overlapping conferences, email exchanges between counsel, phone calls, and other strategy sessions in this regard. (Doc. 212).

**Second**, the billing records (Doc. 212-SEALED) include numerous entries by paralegals for clerical/secretarial work (not work traditionally done by an attorney) and non-recoverable

entries by counsel, as well as other redundancies.  Some examples include (but are not limited to) time billed to: "review emails," "review and revise template", "communicate with", "review email exchanges", "review and respond to emails" of clients,  "exchange emails", correspondence, client calls, "review email from court", "review ECF notices," "communicate with team," "communicate with staff," "exchange 4 emails," "communicate with co-counsel," "email correspondence," "emails with....", "call with....", "communicate with clients," "train Valerie to run POS reports[,]" "download POS reports[,]" "bates stamped[]", "note citations," "pull cases," "convert reports[,]" the creation of spreadsheets, setting up of files, receiving/reviewing and organizing documents, generating or pulling reports, creating excel worksheets, preparing data, data entry, copying documents, creating summaries, "download depo transcripts and save case to file," "download deposition videos and save too file," "call to court reporter," "save uber receipts," calendaring depositions, "reviewed depo transcripts to make sure that they were saved to case file," save files/documents, create spreadsheets, "taking training courses, "registering for lexisnexis university to learn how to use depo software," updating spreadsheets, "research refund policies for travel arrangements made," converting time sheets into excel sheets, saving defendants' records, calendaring deadlines, "arranging for travel plans," etc.  Additionally, there is a stand-alone entry for 25.20 hours for attorney Teeples with no description whatsoever of the work performed.  (Doc. 212-1 at 2).  Moreover, a number of the entries appear to bill several times for the same tasks (duplicatively).  Further, while there are other deficiencies in the 67 pages of single-spaced billing entries (e.g., referencing individuals or tasks by only initials without description, such that the Court cannot discern the task performed), the foregoing examples are sufficient to highlight the

undersigned's challenges in assessing the propriety and reasonableness of the time billed among the 5 attorneys and 6 paralegals at 3 different law firms.

Faced with these circumstances, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins,* 548 F.3d at 1350; *see also Loranger,* 10 F.3d at 783 ("where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required").  The Court selects the latter approach.  Thus, upon examination of Plaintiffs' billing records, and with regard for the history of this case and consideration of the parties' arguments and the factors the Court has considered *supra*, a **50% across-the-board cut** to the hours requested by each billing attorney and each billing paralegal is imposed.  Thus, the hours awarded are as follows:

| BILLER | HOURS REQUESTED (Doc. 211-1 at 18) | HOURS AWARDED |
|---|---|---|
| **Yezbak** | 389.20 | **194.60** |
| **Richardson** | 195.95 | **97.97** |
| **Arciniegas** (while at Yezbak law firm) | 187.00 | **93.50** |
| **Arciniegas** (once at solo firm) | 378.60 | **189.30** |
| **Teeples** | 644.70 | **322.35** |
| **Doster** | 84.50 | **42.25** |
| **Flowers** | 6.40 | **3.20** |
| **Sanchez** | 8.90 | **4.45** |
| **Xue** | 18.50 | **9.25** |
| **Boyette** | 13.10 | **6.55** |
| **Jephson** | 244.50 | **122.25** |
| **Yang** | 18.0 | **9.0** |

C.    **The Lodestar**

"For decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'"   <u>Norman</u>, 836 F.2d at 1303.   Accordingly, "where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the [appellate] court may make the award on its own experience." <u>Id</u>.   The lodestar figure established may be adjusted by consideration of these factors:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

<u>Van Schaack v. AmSouth Bank, N.A.</u>, 530 So.2d 740, 749 (Ala. 1988).

Plaintiffs' counsel contends the lodestar consideration merits no adjustment because the <u>Johnson</u> factors support a full award in their favor.   (Doc. 211 at 17-29; Doc. 211-1 at 11-15 (Decltn. Yezbak); Doc. 217 at 12-17).   The Court cannot agree, entirely.

While litigating a collective FLSA action with 77 plaintiffs inherently requires significantly more time and labor than a 1 plaintiff case, and Defendants' conduct may have protracted same, counsel attests to their expertise and significant skill in the FLSA field by both many years of experience and by excellent reputation (via declarations of counsel).   This undermines the matter being novel, complex, or challenging to manage.

Additionally, the Court cannot agree that this litigation presented novel and difficult legal questions on which there is little developed case law, as characterized by counsel.  While there were some novel issues which arose during trial, the vast majority of the claims and defenses were either addressed and/or resolved by turning to the existing FLSA case law. Counsel's disagreement with the Court's rulings are not tantamount to the creation of novel and difficult legal question.

As to counsel's fee, they litigated the case on a contingency basis using three (3) law firms that either had only 2 attorneys in each or was a solo practitioner (Doc. 211 at 20), which they attest required them to turn down or delay other cases.  Per Plaintiffs, a reduction in the lodestar would punish counsel and disincentivize other attorneys from accepting similar cases.  (Id. at 20-21).  However, such was counsel's choice and decision to make, as they were in the best position to know their law firm's respective capabilities and the potentials for recovery.

Moreover, Plaintiffs assert that they succeeded on all of their claims, even though they did not win all the damages they hoped to recover at trial, because the jury awarded damages for unpaid minimum wages and overtime. (Doc. 211 at 21-22).  The record indicates otherwise.

And concerning proportionality, Plaintiffs contend that a reduction should be rejected as other federal courts *outside of the Eleventh Circuit* regularly award fees to counsel for FLSA plaintiffs in amounts exceeding wages recovered. (Doc. 211 at 23).  Given the case law within the Eleventh Circuit finding contrarily, this argument is not persuasive.

With regard to undesirability of this case, counsel asserts: plaintiffs' individual damages were known to be relatively modest, Defendants had a defunct restaurant and were a collection risk, the DOL was already investigating Defendants which can moot a case if the DOL files a lawsuit based on the same facts, after plaintiffs filed this case the Defendants settled with the DOL

without notice (which reduced the number of plaintiffs who could join the collective action further limited potential recovery), and Defendant Matt Shipp repeatedly asserted he would never settle the case indicating a much higher likelihood of proceeding to trial, an "all-encompassing endeavor" versus resolving the litigation via settlement. (Doc. 211 at 26-28). As noted *supra* however, counsel *chose* to litigate this case and represent some 77 plaintiffs *already knowing* certain of these "undesirability" factors -- the modest recovery potential, knowing the restaurant was defunct, and knowing the DOL was investigating.

In sum, while the Court finds merit in *some* of Plaintiffs' <u>Johnson</u> factors contentions, the undersigned cannot agree with counsel's characterization as to all. Upon consideration, however, the Court is satisfied that the reduced hourly rates coupled with the 50% reduction of the hours requested addresses the undersigned's concerns, such that the lodestar need not be adjusted further.

**D.    <u>Conclusion</u>**

As such, the Court finds the following in attorneys' fees to be reasonable:

| BILLER | POSITION | HOURS | RATE | AWARD |
|---|---|---|---|---|
| **Yezbak** | Senior Attorney (25 years) | 194.60 | $350/hour | $68,110.00 |
| **Richardson** | Senior Attorney (14 years) | 97.97 | $325/hour | $31,840.25 |
| **Arciniegas (Yezbak law firm)** | Senior Attorney (12 years) | 93.50 | $325/hour | $30,387.50 |
| **Arciniegas (solo law firm)** | (same) | 189.30 | $325/hour | $61,522.50 |
| **Teeples** | Associate (6 years) | 322.35 | $250/hour | $80,587.50 |
| **Doster** | Associate (3-4 years) | 42.25 | $175/hour | $7,393.75 |
| **Flowers** | Paralegal (experience unknown) | 3.20 | $75/hour | $240.00 |
| **Sanchez** | Paralegal (experience unknown) | 4.45 | $75/hour | $333.75 |

| **Xue** | Paralegal (experience unknown) | 9.25 | $75/hour | $693.75 |
| **Boyette** | Paralegal (experience unknown) | 6.55 | $75/hour | $491.25 |
| **Jephson** | Paralegal (experience unknown) | 122.25 | $75/hour | $9,168.75 |
| **Yang** | Paralegal (experience unknown) | 9.0 | $75/hour | $675 |
| **TOTAL** | | | | **$291,444.00** |

## II.   Costs

Plaintiffs seek **$60,848.08** in costs for court and *pro hac vice* filing fees, process server, data entry, flight, hotel, meals, parking, rental car, gas, copies, postage, supplies, preparation, transcripts, PACER fees, hired car, video, transfer, IT support, data analytics, court copies, expense mileage reimbursement, service, transfers, and for a witness (fees/travel/expenses).  (Doc. 211-1 at 20-23).  Plaintiffs have left it to the Court to sort out the expenses and categorize same.  Yezbak's Declaration states only as follows:

> 22. Plaintiffs' counsel has incurred significant expenses. I have reviewed the itemized costs and expenses incurred by my co-counsel. All these costs and expenses were reasonable and necessary for prosecuting Plaintiffs' claims. The combined costs and expenses from all three firms representing Plaintiffs total $60,848.08. All these costs and expenses were necessary to ultimately achieve the result in this action.

(Id.)  Defendants oppose costs, noting they are twice the amount of the jury's verdict, and suggesting counsel did not ensure that costs were economically feasible vis-a-vis potential damages.  (Doc. 215 at 6).

Most of the costs requested are not recoverable as a matter of law. Specifically, the FLSA provides for an award of costs of the action to a prevailing plaintiff under 29 U.S.C. § 216(b). Additionally Federal Rule of Civil Procedure 54(d)(1) states that except as otherwise provided,

"costs – other than attorney's fees – shall be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). *However*, the costs allowed are those set forth in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437, 440–444 (1987). And in an FLSA action, courts are *limited* to taxing the costs in 28 U.S.C. § 1920. *Padurjan v. Aventure Limousine & Transp. Serv., Inc.*, 441 Fed. Appx. 684, 687 (11th Cir. 2011) ("In [*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-445 (1987),] the Supreme Court held that the costs taxable in favor of a prevailing party are limited to those authorized in 28 U.S.C. § 1920....We then applied this holding specifically to...the FLSA -- in *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988)[.]").[4] See also *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (limiting FLSA costs to those in Section 1920). "The Court has previously recognized this limitation on the recovery of costs under the FLSA, *Clark*, 2013 WL 3930095, *9, as have many sister courts within the Eleventh Circuit[]." *Smith v. Werner Enters., Inc.*, 2015 WL 7185503, *10 (S.D. Ala. Nov. 13, 2015).[5]

Section 1920 enumerates the following as taxable costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

---

4 *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) ("[N]othing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920."). See also e.g., Smith v. Werner Enterp., Inc., 2015 WL 7185503,*10 (S.D. Ala. Nov. 13, 2015); Rumreich v. Good Shepherd Day School of Charlotte, Inc., 2019 WL 2078730, * 1 (M.D. Fla. April 23, 2019) (same); *Goldsby v. Renosol Seating, LLC,* 2013 WL 6535253, *9 (S.D.Ala. Dec. 13, 2013) (same); Williams v. R.W. Cannon, Inc., 657 F. Supp. 2d 1302, 1314 (S.D. Fla. 2009)).

5 Citing *Cobb v. City of Roswell*, 987 F. Supp. 2d 1319, 1327 (N.D. Ga. 2013); *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1315 (S.D. Fla. 2009); *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005); *Jackson v. Jump*, 2014 WL 10558844 at *9 (S.D. Ga. 2014); *Fox v Tyson Foods, Inc.*, 2009 WL 9541256 at *21-22 (N.D. Ala. 2009).

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The party seeking costs must submit a request that enables the court to determine entitlement to same. *Zainulabeddin v. Univ. of South Fla. Bd. of Trustees*, 749 Fed. Appx. 776, 787 (11th Cir. 2018) (citing *Loranger*, 10 F.3d at 784). *Cf. Boyer v. Flagship Auto. Ctr., LLC, 2013 WL 2467778, *7 (M.D. Fla. Jun. 7, 2013)* ("Plaintiff failed to attach any documents...The only cost the Court can verify without additional documentation is the filing fee....the Court will....not tax any of the other listed costs[]"). See also generally Ford v. Navika Capital Grp., LLC, 2017 WL 1381668 (S.D. Ala. Apr. 17, 2017); Bumpers v. Austal U.S.A., L.L.C., 2015 WL 6870122 (S.D. Ala. Nov. 6, 2015).

### A.    Court Filing Fees

Counsel seeks **$469.00** in court costs ($400.00 for filing the complaint, $19.00 for obtaining a certificate of good standing for *pro hac vice* admission and $50.00 for *pro hac vice* fees). As set forth in Section 1920(1), "[f]ees of the clerk" may be taxed as costs. While counsel has failed to submit documentation in support of these costs, the Court is aware of its filing fees. Still, while the fee associated with the filing of the Complaint is recoverable, *pro hac vice* fees are non-recoverable. See, e.g., Developers Surety and Indem. Co. v. Renew Maint. & Const., Inc., 2018 WL 6185999, *13 (S.D. Ala. 2018); Lane v. Accredited Collection Agency, Inc., 2014 WL 1685677, *9 (M.D. Fla. Apr. 28, 2014); Maciejczyk v. You Fit, Inc., 2013 WL 7186419, *5 (M.D. Fla. Dec. 12, 2013); Covington v. Arizona Bev. Co., LLC, 2011 WL 810592, *3 (S.D. Fla. Jan. 25, 2011) (citing Exhibit Icons, LLC v. XP Cos., LLC, 2009 WL 3877667, *1 (S.D. Fla. Nov. 18,

2009) (citing *Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1459-1460 (M.D. Ala. 1997)*, *aff'd* 162 F.3d 98 (11th Cir. 1998)).  As such, Plaintiffs' costs are **GRANTED** in the amount of **$400.00** for court filing fees but **DENIED** as to the remainder.

## B.     Process Servers

Plaintiffs seeks to recover **$520.00** for process servers: service of process on Matt and Regina Shipp via John Goodwin on 5/25/17 ($135), process server for Faye Dueitt on 3/21/19 ($100), service of process on Matt and Regina Shipp via NWF Process on 11/19/19 ($60), summons (urgent/rush) to Richard Thomas via Alacrity Legal Services on 11/21/19 ($150), and summons to Richard Thomas (second set of docs) via Alacrity Legal Services on 11/21/19 ($75). Plaintiffs provide no description of these costs (i.e., service of complaint and summons, service of trial subpoena etc.).  However, the docket indicates that the 5/25/17 service was for the complaint and the 11/21/19 service on Thomas was a trial subpoena, and the Court surmises that the 11/19/19 service on the Shipps were also trial subpoenas.

Per Section 1920(1), "[f]ees of the...marshal" may be taxed as costs. While Section 1920(1) specifies "the marshal," the Eleventh Circuit has held service by a private process server to be compensable so long as their rates do not exceed the cost of having the U.S. Marshals Service effectuate service. *E.E.O.C. v. W&O, Inc., 213 F.3d 600, 623-624 (11th Cir. 2000)*.  See also 28 C.F.R. § 0.114(a)(3). Pursuant to Section 1920(1), fees for process served or executed personally are recoverable up to $65.00 for each item served.[6]  *W&O, 213 F.3d at 624*. However, costs for

---

6 Section 0.114(a) provides in relevant part:

(a) The United States Marshals Service shall routinely collect fees ....:
       (1) For process forwarded for service from one U.S. Marshals Service Office or suboffice to another—$8 per item forwarded; (2) For process served by mail—$8 per item mailed; (3) For process served or executed personally—$65 per hour (or portion thereof)

attempting to serve the same individual at different addresses and/or rush or expedited fees are not recoverable. See, e.g., Ford, 2017 WL 1381668 at *4; *Khoury v. Miami-Dade Cty. Sch. Bd.*, 2018 WL 7150192, *3 (S.D. Fla. Nov. 28, 2018). Based on the foregoing, Plaintiffs' process server costs are **GRANTED** in the amount of **$255.00** (5/25/17 Shipps ($65/per, $130 total), 11/19/19 Shipps $60, and 11/21/19 Thomas $65); but **DENIED** as to the remainder.

**C.**      **Attorney Travel/Flights/Baggage Fee, Lodging (Hotel), Meals, Postage, Rental Cars, Hired Cars/Uber (including "transfers"), PACER, Parking, Supplies, Gasoline, Mileage Reimbursement, Computer Research, Data Entry, Data Analytics & IT/Computer Assistance or Support**

Plaintiffs seek significant costs for attorney travel/flights/baggage fees, lodging (hotel), meals, postage, rental cars, hired cars/Uber ride sharing services (including "transfer"), PACER charges, parking, supplies, gasoline, mileage, computer research, data entry, data analytics, and IT/computer assistance or support.

Relevant case law indicates, **despite Plaintiffs' Counsel representation to the contrary,**[7] that none of these costs are awardable under Section 1920.  See, e.g., *Scelta v. Delicatessen Support Services, Inc.,* 203 F.Supp.2d 1328, 1339 (M.D. Fla. 2002) (".....computerized legal research, attorney travel and lodging, postage, search services, office supplies, attorney meals, secretarial services.....are not compensable under § 1920 because these expenses are not enumerated in the statute[]"). *Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir. 1996) (postage and

---

for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses. For each additional U.S. Marshals Service employee, agent, or contractor who is needed to serve process—$65 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses.

7 "Although case law does permit the recovery of litigation expenses as part of an attorney fee award under .... 42 U.S.C. § 1988....Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1190 (11th Cir. 1983)…, the Plaintiff cites to no binding precedent supporting such an award under FLSA." Jochem, 2007 WL 9702265 at *3.

computerized legal research not compensable under § 1920); *Ramirez v. Raptor Tech. Grp., Inc.*, 2012 WL 1758134, *4 (M.D. Fla. May 2, 2012) (postage is not compensable).

Additionally, attorney travel expenses are not recoverable. See, e.g., Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 802 (11th Cir. 2012); Gary Brown & Assocs., Inc. v. Ashdon, Inc., 268 Fed. Appx. 837, 845-846 (11th Cir. 2008); D.B., 2015 WL 847293, *5; Cordova v. R&A Oysters, Inc., 2016 WL 2642220, *6 (S.D. Ala. May 9, 2016).

Likewise, the costs of meals are not awardable. See, e.g., Woods v. On Baldwin Pond, LLC, 2016 WL 7325546, *9 (M.D. Fla. Apr. 29, 2016); *Armitage v. Dolphin Plumbing & Mech., LLC*, 2007 WL 2209234, *4 (M.D. Fla. July 30, 2007); *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.,* 2007 WL 842771, *10 (M.D. Fla. Mar. 20, 2007).

Similarly, lodging costs are not recoverable. See, e.g., Jochem v. PolyMedica Corp., 2007 WL 9702265, *3 (S.D. Fla. Dec. 21, 2007) ("the Plaintiff seeks to recover....expenses such as....lodging....The FLSA statute authorizing fee shifting makes no mention of such expenses[]").

Moreover, the costs of rental cars/hired cars, parking, gasoline, mileage, computerized legal research, database creation, and IT/computer assistance are not awardable. See, e.g., Duckworth, 97 F.3d at 1399) ("computerized legal research....courthouse parking fees...[are] nonrecoverable[]"); Jochem, 2007 WL 9702265, *3 (disallowing computer research and specialized vendor fees for database creation); Mock v. Bell Helicopter Textron, Inc., 2010 WL 11506906, *10 (M.D. Fla. Jun. 30, 2010) (disallowing PACER, computer research, consultant fees), *aff'd in part rev'd in part (on other grounds) by* Mock, 456 Fed. Appx. 799 (11th Cir. 2012). Indeed, creating an electronic database/compilation or enhanced digital files "goes well beyond the statutory intent" for taxable digital copies. Finnerty v. Stiefel Labs., Inc., 900 F.Supp.2d 1317,

1321-1322 (S.D. Fla. Oct. 16, 2012) (refusing to award the costs of an electronic database that was solely for the creating party's convenience).  See also e.g., Johnson v. Allstate Ins. Co., 2012 WL 4936598, *6 (S.D. Ill. Oct. 16, 2012) (refusing to award costs for creation of litigation database, processing of ESI, extraction of metadata, electronic data hosting, ESI, etc.); Abbott Point of Care, Inc. v. Epocal, Inc., 2012 WL 7810970, *2-4 (N.D. Ala. No. 5, 2012) (disallowing Section 1940(4) copies for "e-discovery costs" relating to e-discovery/database charges). And Plaintiffs have not explained how this digital/electronic data was necessarily obtained for use in the case rather the convenience of counsel.  See, e,g, Cadle, 2015 WL 4352048, *6 ("Defendant provides no explanation.....the costs for digital .....deposition transcripts....not recoverable[]"); Zarra v. Sun Sentinel Co., 2013 WL 704770, *1 (S.D. Fla. Feb. 26, 2013) ("[u]nless shown to be necessary…digital copies are not recoverable under 28 U.S.C. § 1920(2)…[b]ecause Defendant has not explained why the disputed charges were necessary rather than just convenient, those costs are not taxable...[]"); Powell, 2010 WL 4116488, *19 (disallowing costs for file folder captures, scans into email, etc.).  Further, concerning PACER, as noted in Gaceck v. Owens, 2016 WL 6023342, *4 (S.D. Ala. Oct. 13, 2016):

> Pacer charges are usually not recoverable since parties to cases can view the documents in their cases without incurring a charge. The parties received a "free look" at all filings in their case and Mr. Maples has offered no explanation why any PACER charges were necessarily incurred in this case. See Lee v. Krystal Co., 918 F. Supp. 2d 1261, 1275 (S.D. Ala. 2013) ("the PACER charge is not documented or explained in any meaningful way, and appears invalid given that litigants in this District Court get a "free look" at all filings in their case, with no PACER charges").

See also e.g., MB Reo-FL Church-2, LLC v. Tampa for Christ Church, Inc., 2018 WL 3008896, at *3 (M.D. Fla. June 15, 2018) (PACER fees are not taxable under Section 1920); Panico v. Ygsl

*Holdings LLC,* 2013 WL 12092116, at *1 n.2 (S.D. Fla. Apr. 5, 2013) (same); *Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc.,* 2010 WL 680948, at *15 (S.D. Fla. Feb. 24, 2010) (same).

As such, Plaintiffs' requested costs for Attorney Travel/Flights, Lodging, Meals, Postage, Rental Cars, Hired Cars/Uber, PACER, Parking, Supplies, Gasoline, Mileage, Computerized Legal Research, IT/Computer Assistance, are **DENIED**.

**D.    Witness Fee**[8]

Plaintiffs seek to recover **$22,410.06** for costs incurred by "summary witness" Rip Clayton with PageOne Legal for his fee, travel (to testify at trial), and other expenses, on 12/9/19 -- submitting no breakdown of these expenses.[9]  Pursuant to 28 U.S.C. § 1920(3), courts may tax costs for "fees and disbursements for...witnesses."  Witness costs are set by 28 U.S.C. § 1821(b), through which "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

---

8 Plaintiffs also request witness mileage reimbursement for Derek Denley and Richard Thomas. However, both were plaintiffs in the case.  Section 1920(3) provides for recovery of witness fees for non-parties.  See, e.g., Regions Bank v. Chicago Title Ins. Co., 2011 WL 13227793, *2 (S.D. Fla. Dec. 12, 2011); Egwuatu v. Burlington Coat Factory Warehouse Corp., 2011 WL 3793457, *7 (M.D. Fla. Aug. 25, 2011).  See also Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago, 38 F.3d 1429, 1442 (7th Cir. 1994) (".... 28 U.S.C. § 1920(3)...admittedly makes no distinction between party and non-party witnesses. The general rule, however, is that "parties may not normally collect witness fees."....It follows that the district court may not tax witness fees for party witnesses under 28 U.S.C. § 1920(3)[]") (internal citation omitted).

9 There were no expert witnesses in this case.

Specifically, 28 U.S.C. § 1821(a)-(d) provides, in relevant part:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States…shall be paid the fees and allowances provided by this section.

\*\*\*

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

\*\*\*

Thus, recoverable costs include $40.00/day for the witness' trial attendance, a common carrier

expense at "the most economical rate reasonably available," a per diem subsistence if an overnight

29

stay is required, and costs for mileage, tolls, parking fees or taxicab fares. See, e.g., PODS Ent., LLC v. U-Haul Int'l, Inc., 2015 WL 5021668, *1 (M.D. Fla. Aug. 24, 2015); Crouch v. Teledyne Continental Motors, Inc., 2013 WL 203408, *14 (S.D. Ala. Jan. 17, 2013). A witness may recover the cost of airfare if it is the most economical rate (economy class rate versus business class) reasonably available for round trip (not one-way trips) travel by common carrier. See, e.g., Crouch, 2013 WL 203408, *17 and *19 (reducing flight costs 50% because the documentation was not sufficient to establish that travel at the most economical rate).[10]  Moreover, regarding subsistence (lodging and M&IE), "[a] subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed[.]"  28 U.S.C. § 1821(d)(2). Courts look at the maximum per diem allowance based on the location where trial occurred and award *the lesser* of the maximum per diem amount or the amount actually paid/incurred. Santana v. RCSH Operations, LLC, 2012 WL 3779013, *4 (S.D. Fla. Aug. 31, 2012) ("the amount taxable is the amount actually paid or the statutorily defined amount, whichever is less…." (citations omitted); D.B. v. Orange Cty., Fla., 2015 WL 847293, *3 (M.D. Fla. Feb. 26, 2015) ("[t]he general rule…is that expert witness fees are not taxable….beyond the statutory per diem fee, mileage and the subsistence allowance…under 28 U.S.C. § 1821[]").

As such, given the lack of mileage or subsistence information, Plaintiffs are awarded only **$40.00** for Clayton's (1) day of trial testimony on December 5, 2019.  See, e.g., Glenn v. General

---

10 Crouch, 2013 WL 203408 at *17: "…the cost of…air travel…is reduced by 50%.....*Aguiar v. Natbony*, 2011 WL 4387180, *2 (S.D. Fla., Sept. 20, 2011) (overruling objections and adopting the magistrate judge's recommendation to reduce by 50% the airfare of a witness who "did not provide proof of the 'most economical rate reasonably available'"); *see also Moncus v. Johanns,* 2006 WL 1180950, *3 (M.D. Ala. May 2, 2006) (…"because the government has made no showing that his ticket was purchased at 'the most economical rate reasonably available,' the Court finds that the government is only entitled to recover…[a lesser amount for air travel]…)."

<u>Motors Corp.</u>, 841 F.2d 1567, 1574 at note 19 (11th Cir. 1988) (noting the maximum amount recoverable for witness fees is set in Section 1821 (FLSA case)); <u>Salinas v. Rodriguez</u>, 963 F.2d 791, 795 (5th Cir. 1992) (same (FLSA case)); <u>Thompson v. North Broward Neurology, P.A.</u>, 2017 WL 7792715, *3 (S.D. Fla. Jul. 20, 2017) (awarding only $40/day for a witness in an FLSA case, due in part due to an absence of records documenting costs); <u>Cobb v. City of Roswell, GA.</u>, 987 F.Supp.2d 1319 (N.D. Ga. Oct. 11, 2013) (same); <u>Equal Employment Opportunity Comm'n v. Winn-Dixie Montgomery</u>, 2011 WL 13248688, *2 (S.D. Ala. Mar. 24, 2011) (discussing the $40/day attendance fee for witnesses at trial for each day's attendance).

**E.**     **<u>Copies/Printing</u>**

Plaintiffs seek **$4,318.61** in copying/printing costs ($16.00 for probate property records), $106.76 for copy/fold/deliver services via Page One Legal on 10/3/17, $71.02 for printing consent forms via FedEx on 10/5/17, $162.25 for copies/comb binding via Office Depot on 11/20/19, $998.81 for 13,304 autofeed, 12 binders via Pro Legal copies on 11/22/19, $28.00 for copies/comb binding via Office Depot on 11/22/19, $113.41 for 683 copies via Pro Legal Copies and 108 tabs via Pro Legal Copies on 11/25/19, $322.21 for 1,385 copies and 3 tabs via Pro Legal Copies on 11/26/19, $475.64 trial binder copies via Pro Legal Copies on 11/26/19, $413.86 for 2,732 copies and 432 tabs via Pro Legal Copies on 11/27/19, $1,238.90 for 12,389 copies via Yezbak law offices on 11/30/19, $118.65 for 2,373 copies for 11-18 to 12-1-9 via Richardson Law firm on 12/1/19, and $253.10 for 5,062 copies for 12-1-9 via the Richardson law firm on 12/1/19.  Plaintiffs submitted no explanation for and/or documentation of these costs.

Section 1920(4) provides for copying costs and section 1920(3) provides for "[f]ees and disbursements for printing." While Plaintiffs need not provide "an accounting for each

photocopy", they must provide "evidence showing the nature of the documents copied and how

they were used." Dillon v. Axxsys Int'l, Inc., 2006 WL 3841809, *7 (M.D. Fla. Dec. 19, 2006);

Powell, 2010 WL 4116488, at *17. The burden remains on the prevailing party. Cullens v. Georgia

Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994).  Per Weller v. Finger, 2010 WL 2465522,

*9 (S.D. Ala. Jun. 15, 2010):

> …"[I]n evaluating copying costs, the court should consider whether the prevailing
> party could have reasonably believed that it was necessary to copy the papers at
> issue." *W&O*, 213 F.3d at 623. For example, the cost of copying documents
> produced by an adverse party may be awardable under this rule. *Id*. However,
> "[e]xtra copies or copies prepared for the convenience of counsel are not taxable...."
> *Biomedical Disposal, Inc. v. Mediq/PRN Life Support Services, Inc*., 2007 WL
> 2593075 at *3 (N.D.Ga. September 4, 2007); *accord Bates v. Islamorada, Village
> of Islands*, 2007 WL 2113586 at *18 (S.D.Fla. July 23, 2007); *Pickett v. Tyson
> Fresh Meats, Inc*., 2004 WL 3712721 at *6 (M.D.Ala. August 3, 2004) (the first
> copy of opponent's trial exhibits was necessarily obtained, but the second and third
> copies were for the convenience of counsel and not taxable)…. Defendant, citing
> *Miller v. Kenworth of Dothan, Inc*., 117 F.Supp.2d 1247 (M.D.Ala.2000), also
> asserts that plaintiff failed to specify the purpose of the photocopies or explain the
> nature of the documents copied. In *Miller*, the court found that a claim for copying
> described only as "copying expense[s]" and "[g]eneral copying throughout file"
> was not sufficient documentation to demonstrate that the photocopying costs were
> necessary for use in the litigation. *Id*. at 1265….While not every page is described,
> it is apparent what is being copied and the court finds that, without any specific
> objections to particular documents, the descriptions are sufficient to demonstrate
> that they were necessary….

But Plaintiffs only have to present *sufficient* information showing the copies were necessarily

obtained for use in the case.  W&O, 213 F.3d at 623 ("[p]hotocopying costs may be recovered

even though the underlying document was not admitted at trial[]" (quoting United States ex rel.

Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2nd Cir.

1996)); Eleison Composites, LLC v. Wachovia Bank, N.A., 2007 WL 9701151, *2 (N.D. Ga. Apr.

3, 2017) (same).   Moreover, the costs of copying documents, as requested by the Court (e.g., to

provide the judge a courtesy/bench copy for trial), may be recoverable.  See also Perez v. Pasadena

Ind. Sch. Dist., 165 F.3d 368, 374 (5th Cir. 1999) (not an abuse of discretion for district court to allow prevailing party to recover costs of trial exhibits listed in pretrial order and provided to court in trial notebooks); Apple Inc. v. Samsung Electronics Co., Ltd., 2015 WL 4967769, *10 (N.D. Cal. Aug. 20, 2015) (discussing that copies of trial exhibits -- required by the Judge -- were recoverable per standing order); Kendel v. Local 17-A United Food & Comm. Workers, 2013 WL 12291706, *7 (N.D. Ohio Jan. 25, 2013) (same, per the court's instruction).

However, costs "for copies of original documents possessed by the prevailing party are not taxable" and costs "for extra copies and for documents prepared for convenience, preparation, research, or for the records of counsel are not taxable." Scottsdale Ins. Co., 2012 WL 750317, *3; Gray v. Novell, Inc., 2012 WL 3886026, *2 (M.D. Fla. Sept. 6, 2012); Autry Petroleum Co. v. BP Products North America, Inc., 2010 WL 3239010, *2 (M.D. Ga. Aug. 16, 2010).  Similarly, costs of physical exhibits like charts, models, or replicas and costs of foam board blow-ups are generally not allowed. Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc., 249 F.3d 1293, 1297 (11th Cir. 2001) ("[i]n this circuit, physical exhibits like models and charts simply may not be taxed as costs because there is no statutory authorization[]"); Moncus v. Johanns, 2006 WL 1180950, *6 (M.D. Ala. May 2, 2006) ("While the enlargements of these memoranda may have demonstrated counsel's points with increased clarity, enlargement of the documents was not necessary within the meaning of § 1920. The government could have used the letter-size originals and the Elmo to achieve a similar effect.") (citation omitted); Powell, 2010 WL 4116488 at *21.  See also In re Scientific–Atlanta, Inc. Securities Litigation, 2011 WL 2671296, *1 (N.D. Ga. Jul. 6, 2011). Likewise, copying costs "merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only" are not recoverable." W&O, 213 F.3d at 620–621.  This includes

copies made for trial notebooks for counsel. These costs are not taxed because trial notebooks are generally prepared for convenience of counsel and not necessarily obtained for use in the case. Powell, 2010 WL 4116488 at *16 (finding costs for creation of notebooks including binders and tabs was not taxable); Scottsdale Ins. Co., 2012 WL 750317 at *3 (costs "for documents prepared for ... preparation ... are not taxable[]").

The Court is ill-equipped to assess or award costs for copying/printing.  This is due to Plaintiffs' failure to provide any explanation or description for the costs incurred.  For the trial notebook sets supplied to the Court (Judge's copy), those costs are likely recoverable as the Court specifically requested same. "However, the conclusion that the photocopy costs are recoverable does not answer the question of their reasonableness."  Perkins v. Tolen, 2012 WL 3244512, *3 (M.D. Fla. Jul. 13, 2012) (Report and Recommendation), *adopted* by 2012 WL 3244688 (M.D. Fla. Au. 7, 2012).  "Within….the Eleventh Circuit generally, there is broad consensus that the reasonable market rate for copies is $.10 to $.15 cents…"  Id.  The Court is unable to determine the reasonableness of the copies, as well as which particular "trial copying" costs were incurred due to the request of the Court or rather for counsel's convenience.  Additionally, it appears that Plaintiffs seek to recover the costs of tabs and 3-ring binder notebooks without indicating whether such costs were incurred at the court's request or for counsel's convenience.  Generally, Section 1920 does not provide for recovery of costs for binders and tabs. See, e.g., Watson v. Lake Cty., 492 Fed. Appx. 991, 997 (11th Cir. 2012) (same); Crouch, 2013 WL 203408 at *22 and *25 ("costs for binders and tabs are not taxed. *See Powell*, 2010 WL 4116488, *16 (finding costs for creation of notebooks including binders and tabs was not taxable)[]").  This case law appears based on the presumption that such costs are overhead and obtained for convenience of counsel, not as having

been ordered or requested by the court.  In contrast, "the costs for binders, folders, labels and related items are reimbursable when used in conjunction with complying with an order specifically requiring them…." Procaps S.A. v. Patheon Inc., 2016 WL 411017, *7 (S.D. Fla. Feb. 2, 2016). See also Galbretah v. Hale Cty., Al. Commn, 2017 WL 3584920, *12 (S.D. Ala. Aug. 17, 2017) (same). As such, given the lack of information before the Court, the copying/printing costs are **DENIED**.

### F.    **Preparation/Contract Labor**

Plaintiffs seek **$170.00** for "contract labor-prep notices to send" via the Yezbak Law Offices on 10/5/17.  Again, Plaintiffs fail to submit any explanation and/or documentation regarding this cost.  And the cost appears to be in the nature of an overhead business expense of the Yezbak law firm, rather than a recoverable cost under Section 1920. Due to the lack of information by Plaintiffs, this cost is **DENIED.**

### G.    **Transcripts & Video Depositions**

Plaintiffs seek **$8,051.40** for transcript costs as follows: $1,124.00 for deposition transcripts of "Hopper, Boyett, Ballard, Nail" via Isbell & Associates on 11/8/18; $957.50 for video depositions of Robert and Regina Shipp via Southcoast Productions on 12/5/18; $861.11 for deposition transcripts (unknown as to whom) via Veritext Legal Solutions on 2/15/19; $472.60 for transcript services - Lillard and Mink via Veritext Legal Solutions on 3/5/19; $1,171.50 for deposition transcripts of "R Thomas" via Isbell & Associates on 3/27/19; $1,183.00 for deposition transcripts of Matt and Regina Shipp via Isbell & Assoc. on 4/11/19; $260.60 for transcripts-Martel via US Legal Support Inc. on 4/15/19; $250.25 for Transcripts-Kincaid via US Legal Support Inc. on 4/16/19; $179.30 for deposition transcript of Anna Miller via Discovery Litigation Services on

4/22/19; $835.29 for deposition transcripts (unknown as to whom) via Veritext Legal Solutions on 11/21/19; and $756.25 for transcripts for R Thomas via Melanie Wilkins on 12/5/19 (unknown whether deposition or hearing etc.).

In this Court, Standing Order 13 requires the prevailing party to submit a "written representation ... that a substantial portion of the deposition was admitted in evidence on the trial of the case." Otherwise the clerk *may not* tax the costs of either the original or a copy of a deposition unless otherwise ordered by the court. Id. Standing Order 13 provides that costs shall be taxed as follows:

> 1. Deposition Costs:
> (a) The Clerk may tax the cost of an original deposition upon the written representation of counsel for a party claiming the cost that a substantial portion of the deposition was admitted in evidence on the trial of the case.
> (b) The Clerk shall not otherwise tax the costs of either the original or a copy of the deposition (unless otherwise ordered by the court) and any party desiring to tax the cost of depositions other than those described in subparagraph (a) shall file in writing a motion to re-tax the costs pursuant to Fed.R.Civ.P. 54(d) [sic] and Local Rule 54.1 and present the matter to the court.

*However*, the court is not limited by Standing Order 13. As explained in Catanzaro v. Alabama State Port Auth., 2006 WL 3933275, *3 (S.D. Ala. Dec. 7, 2006):

> The court has discretion to award costs under Section 1920 regardless of the limitations of Standing Order 13. Standing Order 13 provides that "any party desiring to tax the cost of depositions other than those described in subparagraph (a) shall file in writing a motion to re-tax the costs pursuant to Fed.R.Civ.P. 45(d) [sic] and Local Rule 54.1 and present the matter to the court ." Local Rule 54.1 provides the procedure for taxation of costs by the clerk in this court. It specifically states that "This order limits only the authority of the clerk to assess costs for certain items otherwise taxable under Section 1920 but does not limit a prevailing party's ability to recover under the statute." Thus, if the expenses are specifically enumerated in § 1920, the court upon proper motion by the prevailing party, may tax the expenses although they were correctly disallowed by the clerk pursuant to Standing Order 13 .....

(Id.) See also Coulter v. J.C. Penney Corp., Inc., 2007 WL 1521634, *1 (S.D. Ala. May 23, 2007).

36

Taxation of deposition costs is authorized by 28 U.S.C. § 1920(2). United States E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000). Whether the costs for a deposition are taxable depends on "whether the deposition was wholly or partially 'necessarily obtained for use in the case." Id. at 621. "Where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." Id. Additionally, while admission into evidence or use during cross-examination at trial tends to demonstrate that a deposition transcript was necessarily obtained, "[i]t is not necessary to use a deposition at trial to be taxable[.]" W&O, 213 F.3d at 621; Kolesar, 313 F.2d at 840.[11] "[O]btaining deposition transcripts for use during discovery may be taxable as long as it is necessary to the issues in the case when the deposition was taken." Lovett v. KLLM, Inc., 2007 WL 983192, *6 (N.D. Ga. Mar. 26, 2007). The burden falls on the losing party to show that specific deposition costs or a particular court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition. W&O, 213 F.3d at 621; Helms v. Wal–Mart Stores, Inc., 808 F. Supp. 1568, 1571 (N.D. Ga. 1992) ("since both parties should be aware of the reasons to take a deposition, the non-prevailing party should explain why the court should not grant that cost[]"). See generally Caribbean I Owners Ass'n, Inc. v. Great Am. Ins. Co. of New York, 2009 WL 2150903, *3-5 (S.D. Ala. Jul. 13, 2009).

However, costs for deposition discs, travel transcripts, PDF/USB bundles, summaries, mini-transcripts, CD/DVD transcripts, electronic transcripts (Etran), ASCII disks, "synchronization," etc., are deemed as incurred for the convenience of counsel and are non-

---

11 28 U.S.C. § 1920(2) allows the taxation of fees of a court reporter who prepares a "stenographic transcript necessarily obtained for use in the case." The trial judge has discretion in determining whether costs of copies are taxable and must decide whether the copies were necessarily obtained for use in the case.

recoverable.  See generally Crouch, 2013 WL 203408, *7-8; Ferguson, 2007 WL 601921, *4; Powell v. The Home Depot, U.S.A., Inc., 2010 WL 4116488, *8 (S.D. Fla. Sept. 14, 2010); Zarra v. Sun Sentinel Co., 2013 WL 704770, *1 (S.D. Fla. Feb. 26, 2013); Awwad v. Largo Med. Ctr., Inc., 2013 WL 6198856, *4 (M.D. Fla. Nov. 27, 2013) (citing Watson v. Lake Cty., 492 Fed. Appx. 991, 997 (11th Cir. 2012)).   Additionally, late fees, expedited transcripts, postage, shipping, delivery and handling charges related to the deposition transcripts are non-recoverable as ordinary business expenses.  See generally Maris Dist. Co. v. Anheuser–Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002); Knight v. Paul & Ron Enters., Inc., 2015 WL 2401504, *9 (M.D. Fla. May 19, 2015); Awwad, 2013 WL 6198856, *4; Kerns v. Pro-Foam of South Ala., Inc., 2007 WL 2710372, *3 (S.D. Ala. Sept. 13, 2007).  Similarly, cost requests (including deficient invoices) failing to sufficiently describe *what* was billed are not recoverable (the cost of the original deposition transcript alone, the cost of multiple copies in addition to the cost of the original transcript, and/or non-recoverable costs (e.g., DVDs, mini-transcripts, postage, shipping, courier charges, etc.)).  See also e.g., Pinkston v. University of South Fla., 2016 WL 9724976, *3 (M.D. Ala. Oct. 5, 2016) ("multiple copies are generally not recoverable[]"); Sheffield v. State Farm Fire and Cas. Co., 2016 WL 5415015, *2 (S.D. Ga. Sept. 26, 2016) ("…requests…for both an original and a copy of…deposition transcript…Sheffield has not shown why the copy was necessary. Therefore, it will not be allowed…Because the Court lacks a receipt itemizing the copy separately from the original, it reduces Sheffield's award for this transcript by half[]")); Caribbean I, 2009 WL 2150903 at *3 at n.1 ("generally the costs of copies [of depositions] are not taxable[]") (citing Vorburger v. Central of Ga. Ry. Co., 47 F.R.D. 571, 573 (M.D. Ala. 1969) (sustaining the plaintiff's objection to taxing the cost of depositions copies)).

1. **Videotaped deposition**

Plaintiffs' request for **$957.50** in videography costs for the depositions of Robert and Regina Shipp via Southcoast Productions on 12/5/18 is **GRANTED**.

2. **Deposition Transcripts**

Plaintiffs seek over **$7,000.00** in deposition transcript costs. However, Plaintiffs fail to provide sufficient information regarding some of the depositions (including whose depositions were taken).  Nevertheless, the Court can discern that Plaintiffs seek recovery for depositions of these individuals: Hopper, Boyett, Ballard, Nail ($1,124.00 combined); R. Thomas ($1,927.75 for 2 depositions -- March/December 2019); the Shipps ($1,183.00); Martel ($260.60); Kincaid ($250.25); Lillard and Mink ($472.60); and A. Miller ($179.30).  Upon review of the record and the trial transcript, the Court is satisfied that the depositions of the following individuals (and their testimony) were necessarily obtained for use in the case: Hopper, Boyett, Ballard, Nail ($1,124.00 combined); R. Thomas ($1,927.75 for 2 depositions -- March/December 2019); the Shipps ($1,183.00); Martel ($260.60); Kincaid ($250.25); Lillard and Mink ($472.60); and A. Miller ($179.30).[12]  Thus, Plaintiffs' motion for these deposition transcript costs in the amount of **$5,397.50** is **GRANTED**, but **DENIED** as to the remainder.

---

[12] These individuals testified at trial or exhibits were submitted related to same.

**III.**   <u>**Conclusion**</u>

Accordingly, it is **ORDERED** that Plaintiffs' motion for attorneys' fees and costs (Docs.

211, 212) is **GRANTED in part** and **DENIED in part** as follows:

<u>**Attorneys' Fees**</u>: **GRANTED** in the amount of **$291,444.00,** but **DENIED** as to the remainder, as detailed *supra*; and

<u>**Costs**</u>: **GRANTED** in the amount of **$7,050.00** ($400.00 filing fee, $255.00 for service of process, $40.00 for a witness fee, $957.50 for videotaped depositions, and $5,397.50 for deposition transcripts), but **DENIED** as to the remainder, as detailed *supra*.

**DONE** and **ORDERED** this the **3rd** day of **April 2020.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**