# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **APRIL R. NAIL,** *et al.***,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 17-00195-KD-B** |
| | ) | |
| **ROBERT M. SHIPP,** *et al.***,** | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on Plaintiffs' Rule 65 *Ex Parte* Motion for Temporary Restraining Order to freeze Defendants' assets "to preserve the status quo" without requiring security or with minimal security (bond), as supported by counsel's declaration and exhibits including public records. (Doc. 233). Specifically, Plaintiffs seek entry of a TRO against the Defendants and the following third-parties (individuals/entities) alleged to be working in concert with Defendants: Kamila Shipp, Zekes Fish House, LLC, MRKS Florida Limited Partnership, Robert Louis Shipp and Linda Shipp, Plunkett Shipp, RMK Restaurants, LLC, Shipp Family Limited Partnership, Regina Shipp Revocable Living Trust, Robert Shipp Revocable Living Trust, The Shipp Family Irrevocable Trust, Fifth Restaurant Group LLC, F&F Destin LLC, R&M Local Kitchen, LLC -- as well "as any other entities owned or controlled by Defendants."[1]

---

[1] Plaintiffs request for entry of a TRO against third-parties (individuals/entities) alleged to be working in concert with Defendants and "as any other entities owned or controlled by Defendants[]" is a broad stroke and the propriety of such a TRO is unclear in this case. At a minimum, additional information would need to be provided to the Court in support of same. See, e.g., Law v. Tillman, 2000 WL 821487, *1 (S.D. Ala. Jun. 16, 2000):

.....Rule 65(d) of the Federal Rules of Civil Procedure, .... provides, in part: "Every order granting an injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons

I.   **Background**

This is a collective action FLSA case with an extensive litigation history in this Court.  On April 3, 2020, Final Judgment issued against Defendants Robert Shipp, Regina Shipp, and Sportsman Fish House, LLC and in favor of Plaintiffs, as follows:

> 1) A Jury verdict in the amount of **$24,651.28** for back wages ($7,287.05 in minimum wage damages and $17,364.23 in overtime wage damages) is awarded, and based on the parties' stipulation (Doc. 208), expense shifting damages are awarded in the amount of **$6,198.00** -- for a total award of **$30,849.28** against Defendants and in favor of Plaintiffs; and
>
> 2) Liquidated damages are awarded in the amount of **$30,849.28,** against Defendants and in favor of Plaintiffs; and
>
> 3) Attorneys' Fees are awarded in the amount of **$291,444.00,** against Defendants and in favor of Plaintiffs; and
>
> 4) Costs are awarded in the amount of **$7,050.00,** against Defendants and in favor of Plaintiffs.

(Doc. 222).  Plaintiffs' present motion is focused on their efforts to collect the judgment.

Per Plaintiffs, on April 16, 2020, counsel for Defendants represented to Plaintiffs that the

---

in active concert or participation with them who receive actual notice of the order by personal service or otherwise." "It is elementary that one is not bound by a judgment in *personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969) (citation omitted). A court is powerless to adjudicate a personal claim against a party unless it has jurisdiction over the party. *Id.* Even a party who is alleged to be in concert or participation is to be accorded a hearing for a determination of his role in the matter before a determination is made that the party is subject to the injunction. *Id.* at 112, 89 S.Ct. at 1570; *see* *Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.,* 872 F.2d 1547, 1554 (11th Cir.1989).

Plaintiff's motion is directed to parties who are not Defendants to this action. Plaintiff's allegations in his motion do not indicate that the parties whom Plaintiff seeks to enjoin were involved in the matters contained in his complaint. Therefore, the parties identified in the motion would not be bound by a temporary restraining order issued by this Court....

See generally Texas v. Department of Labor, 929 F.3d 205 (5th Cir. 2019).

Defendants were not in a position to pay the Judgment, and though Plaintiffs offered a payment plan the Defendants did not respond. (Doc. 233; Doc. 233-2 at 1-11 (Decltn. Yezbak)). In an effort to collect the judgment, on April 17, 2020, Plaintiffs served post-judgment discovery on the Defendants, to which no response was provided. (Id.) On May 28, 2020, Plaintiffs returned to this Court for assistance with post-judgment discovery to collect the judgment (Doc. 223 - motion to compel), which was granted (Doc. 226), giving Defendants until June 26, 2020 to fully and completely respond to discovery.

Also, at some point post-judgment, counsel for Plaintiffs began searching public records regarding the Defendants and apparently learned of "troubling" items indicating that "Defendants have undertaken efforts to shield assets from collection." (Doc. 233; Doc. 233-2 at 1-11 (Decltn. Yezbak)). Per Plaintiffs' counsel, examples of the efforts the Defendants have undertaken to avoid judgment include: Regina Shipp transferring ownership on 11/18/19 of the Shipps' primary residence to an LLC owned/controlled by Regina Shipp - Zekes Fish House, LLC (owned 50% each by Regina and Robert Shipp); Regina Shipp executing a deed on 12/30/19 to transfer the primary residence to trustees of the Frerichs Revocable Living Trust for $825,000; Zekes filing of a warranty deed on 8/14/17 to transfer real property to the Shipp Family Limited Partnership even though that entity did not yet exist (only being formed on 8/22/17) which was corrected via corrected warranty deed on 8/22/17; the Shipps' 20-year old daughter Kamila Shipp is the registered owner of a 28-foot boat with a value of $200,000 and purchased real property in April 2020 for approximately $135,000. (Doc. 233-2 at 1-11 (Decltn. Yezbak and Exs. 9-22 thereto))).

Discovery of these efforts prompted Plaintiffs to issue Rule 45 subpoenas to the law firms and entities involved in the real property transactions which they contend reveals, for example: 1)

3

when the Shipps sold their primary residence they received $770,123.88, $536,670.61 which they used to pay off the mortgage but also received a check for $233,453.27; and 2) when the Shipps sold Sportsman Fish House, LLC to Fisher's at Orange Beach Marina, LLC, Fisher's paid $2 million including a $500,000 down payment and $1.5 million over 3 years with the Defendants receiving $429,350.66 at closing in October 2017 -- but rather than the Shipps receiving payments, Fisher's has been wiring payments to third party MRKS Florida Limited Partnership (the managing member of RMK Restaurants LLC, for whom Regina Shipp is the registered agent). (Doc. 233-2 at 1-11 (Decltn. Yezbak and Exs. 23-29 thereto)). Plaintiffs reference these examples as instances of Defendants' diversion of assets to intentionally avoid payment of the judgment. Plaintiffs also identify further instances of other entities (including family trusts being formed to accomplish this task), specifying that since the Defendants became "aware of their exposure in this case[]" they have formed "at least 12 entities."

> In sum, per Plaintiffs the takeaway -- and impetus for imposition of a TRO -- is as follows:

> The only reasonable conclusion from the facts ... is that Defendants have substantial assets and have been engaged in a long-running series of transactions to hide those assets and to thwart Plaintiffs' ability to collect the judgment that they knew Plaintiffs would win. Defendants knew Plaintiffs were likely to prevail in this lawsuit from the beginning, due to the repeated investigations by the U.S. Department of Labor that found Defendants owed unpaid wages to their employees at Shipp's Harbour Grill and the fact that Robert Shipp was personally responsible for systemically eliminating work hours from his employees' pay.
> ***
> Defendants have refused to timely provide interrogatory responses and dates upon which their depositions can be taken. Additionally, their law firm has refused to timely, complete responses, including bank account information and information about assets, in response to valid subpoenas. Despite receiving at least $41,000 a month since the judgment was entered, Defendants have made no efforts to pay any portion of the judgment. These facts strongly indicate that the Defendants have no intention of satisfying this Court's judgment but rather are attempting to stall the post-judgment proceedings so that they can transfer, hide, or dissipate assets so that Plaintiffs will not be able to collect their judgment.

4

Further evidence of the Defendants intention to frustrate the collection of this judgment is that the Shipps have transferred their residence from Alabama to Florida, a state with an unlimited homestead exemption, and are in the process of relocating their restaurant, Fin & Fork, from Alabama to Florida.

This conclusion is especially powerful for all the actions Defendants took following this Court's grant of summary judgment to Plaintiffs on a subset of their FLSA claims on August 6, 2019, which ensured that Plaintiffs would eventually win a judgment in this matter .... and inescapable for the actions Defendants took following the jury's verdict in favor of Plaintiffs on December 10, 2019.

                                        ***

If this Court does not act now, Defendants could further attempt to shield their assets in the 2-week period between the filing of this motion and the June 26 deadline Judge Bivins set for Defendants to provide full and complete responses to Plaintiffs' post-judgment discovery.

The reason Plaintiffs file an ex parte motion for protective order now is that all the information available in the public record points to Defendants trying to hide assets or make assets unreachable. This activity fits with previous indications from Defendants throughout the litigation that they had no interest in settling the case and that Plaintiffs would not be able to collect on a judgment. It was not until yesterday, June 11 at 4:49 p.m., that we received indisputable evidence that Defendants have had the means to satisfy the judgment but that, rather than make arrangements to do so, they have redirected at least $1.5 million to an entity that does not show up on public records searches but which appears to be under their control. Delaying the issuance of a restraining order, or providing Defendants notice of our inten[t] to obtain a restraining order, would permit Defendants to continue the transfer of assets to other entities or into assets that Plaintiffs will not be able to reach without great cost and expense.

(Doc. 233-2 (Decltn. Yezbak at ¶¶ 21, 23-27)).

## II.   Rule 65 Fed.R.Civ.P. TRO

The Eleventh Circuit in U.S. v. Kaley, 579 F.3d 1246, 1264 (11th Cir. 2009) noted that:

In extraordinary situations, Rule 65....provides an exception to the general rule of prior notice and a hearing. Rule 65 provides that a temporary restraining order ("TRO") may be granted without notice, but only if the party requesting the order can offer specific facts clearly showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed.R.Civ.P. 65(b)(1)(A). TROs are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a

preliminary injunction." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, _Federal Practice and Procedure: Civil § 2951, at 253_ (2d. ed. 1995).

..... Rule 65 requires a prompt post-restraint hearing when a TRO is granted. TROs expire after a fixed period of time set by the court that can be no longer than ten days. Fed.R.Civ.P. 65(b)(2). Immediately after the TRO is granted, therefore, the applicant must move for a preliminary injunction, which requires prior notice and a hearing. Fed. R. Civ. P. 65(a); _see_ Fed.R.Civ.P. 65(b)(3). Unless notice and a hearing are afforded within the ten-day period, the TRO will expire....

"The movant bears the burden of establishing entitlement to a temporary restraining order." Edwards v. Cofield, 2017 WL 2255775, *1 (M.D. Ala. May 18, 2017). To prevail, the movant must establish: 1) a substantial likelihood of success on the merits; 2) irreparable injury will be suffered if the relief is not granted; 3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and 4) that entry of the relief would serve the public interest. See, e.g., _Grizzle v. Kemp,_ 634 F.3d 1314, 1320 (11th Cir.2011); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). However, the Eleventh Circuit instructs that "[a] showing of irreparable injury is the _sine qua non_ of injunctive relief" such that "the absence of a substantial likelihood of irreparable injury would, standing alone, make ... injunctive relief improper." _Siegel v. LePore,_ 234 F.3d 1163, 1176 (11th Cir.2000) (citations omitted).

In this instance, Plaintiffs seek entry of a TRO without notice to Defendants. Plaintiff's _ex parte_ Motion is thus governed by Rule 65(b)(1) which provides:

The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition_;_ and
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Rule 65(b)(1) criteria are strict requirements, "not mere technicalities, but establish minimum due process. Emerging Vision, Inc. v. Glachman, 2010 WL 3293346, *3 (S.D. Fla. June 29, 2010), *report and recommendation adopted*, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). This means the Court must first consider whether Plaintiffs have shown adequate justification for failing to give notice to the Defendants. Id.

As explained in Levins v. Deutsche Bank Trust Co. Americas, 2013 WL 308999, *2 (S.D. Ala. Jan. 25, 2013):

> The circumstances in which *ex parte* TROs may be entered are narrowly circumscribed. *See, e.g., Reno Air RacingAss'n, Inc. v. McCord,* 452 F.3d 1126, 1131 (9th Cir.2006) ("courts have recognized very few circumstances justifying the issuance of an *ex parte* TRO"); *First Technology Safety Systems, Inc. v. Depinet,* 11 F.3d 641, 650 (6th Cir.1993) ("The normal circumstance for which the district court would be justified in proceeding *ex parte* is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found. There is, however, another limited circumstance for which the district court may proceed *ex parte:* where notice to the defendant would render fruitless further prosecution of the action.").

First, the Court addresses counsel's certification regarding any efforts made to give notice and reasons why notice should not be required. Fed.R.Civ.P. 65(b)(1)(B). Neither Plaintiffs nor counsel indicate that any efforts have been made to give notice to Defendants of its TRO request, so that requirement is lacking here. Plaintiffs assert only that no notice regarding the TRO is required because any such notice would alert Defendants to Plaintiffs' collection attempts and permit (and potentially prompt) Defendants to continue (or suddenly increase) the transfer of assets to other entities or into assets that Plaintiffs will not be able to reach without great cost and expense. Specifically, that Defendants may attempt to shield *more* assets rapidly during the 2-week period which remains for discovery to be produced in response to Court order (June 26, 2020). Essentially then, Plaintiffs hinge their bases for issuance of a TRO without notice on the need to keep

Defendants in the dark as to the levels to which Plaintiffs are going to collect the judgment, and in anticipation of Plaintiffs secreting assets if given notice. From the Court's perspective however, Plaintiffs' post-judgment discovery, communications with Defendants' counsel, filing of a motion to compel, and Court order granting same -- have already rung that bell.  The Court thus finds Plaintiffs' bases for issuance of a TRO without notice under the Rule 65(b)(1)(B) assessment is deficient and unpersuasive.

Second, turning to Rule 65(b)(1)A), the Court finds that the motion for a TRO, counsel's declaration and the public records submitted, set forth sufficiently specific facts supporting injury to Plaintiffs, but not -- clearly -- necessarily irreparable, and not necessarily *before* Defendants could be heard in opposition.  A failure to pay a debt or judgment, standing alone, does not support a justifiable fear that the Defendants would act unethically or possibly criminally to avoid the debt. The distinction here is that the Court is presented with Defendants' failure to pay a debt *and* -- as alleged by Plaintiffs -- a recently discovered history of the Defendants having created entities and transferred assets to those entities near the time liability was established in this case.  See, e.g., Haynes v. Haggerty, 2019 WL 7761583 (D. Vermont Sept. 19, 2019) (noting defendant had already transferred assets to third parties and plaintiff's assertions support dissipation of assets further preventing plaintiff's execution of any judgment).  For instance, what is absent in Plaintiffs and counsel's representations to the Court, is their inability to reach the already transferred assets. Ostensibly, Plaintiffs perspective is rooted in the challenges they believe that they would face in attempting to reach those assets (i.e., additional and new litigation, incurring extreme expense, etc., to perhaps void those transfers etc.).

8

The evidence before the Court reveals at best "specific facts" as to what Defendants have _already_ accomplished -- an alleged _history_ of transferring their assets to various entities during litigation of this case -- actions by Plaintiffs _in the past_.

The Court finds that the immediacy element, inextricably tied to irreparable injury, is unclear.  And while the Court acknowledges that Defendants have failed to both respond to discovery and Plaintiffs' motion to compel -- _suggesting_ the possibility of ulterior motives and future efforts to conceal -- the Court granted the motion to compel and ordered Defendants to fully respond to Plaintiffs' discovery by June 26, 2020.  In other words, the Court will learn more, as will Plaintiffs, by said date.

Moreover, as to the impact on waiting until June 26, 2020 to "preserve the status quo," as presented by Plaintiffs, the status quo is that numerous assets have already been transferred -- i.e., the injury has already occurred in the past.  The only allegation/evidence of possible asset transfer in the future is the debt owed by Fisher to the Shipps that Plaintiffs allege is being wired to third party MRKS Florida Limited Partnership. As alleged by Plaintiffs, four payments remain outstanding, for July, August, September, and. October of 2020, for a total outstanding balance of $166,666,64.   This asset fund can be addressed, after notice to defendants, without harm.

Based on the foregoing, the Court is not convinced that issuance of a TRO without notice to Defendants is appropriate.  Entry of this type of TRO is an extreme remedy and Plaintiffs have not shown specific facts for the undersigned to conclude, definitively, that such a remedy is proper at this juncture. "Although the plaintiff alleges irreparable harm, the plaintiffs' conclusory allegation that the defendants will further dissipate the .... assets fails to justify enjoining the defendants before the benefit of a hearing. _See Granny Goose Foods, Inc. v. Brotherhood of_

9

*Teamsters & Auto Truck Drivers Local No. 70 of Alameda County.,* 415 U.S. 423, 432 n. 7.....
(1974)..." Dimare Ruskin, Inc. v. Del Camp Fresh, Inc., 2010 WL 2465158, *2 (M.D. Fla. Jun.
15, 2020).

Based on the foregoing, it is **ORDERED** that Plaintiffs' motion for a TRO will be **HELD
IN ABEYANCE** to allow an opportunity for Defendants to receive notice and an opportunity to
be heard.  Plaintiffs are **ORDERED** to give immediate notice by **overnight mail** to Defendants
and Defendants' counsel of their motion and request for a TRO, as well as a copy of this Order no
later than **June 16, 2020**.  Defendants are **ORDERED** to file a Response by **5:00 p.m**. on **June
18, 2020**.  Further, it is **ORDERED** that a **HEARING** will be held on this matter at **2:00 on June
22, 2020,** in Courtroom 4B, 155 Saint Joseph Street, Mobile, AL.   Matt and/or Regina Shipp are
ordered to appear.


**NOTICE:  Due to the COVID-19, each party is only allowed two people (including
attorneys and paralegals) inside the bar of the court.   An additional two people per party
may appear and sit in the gallery.   All entering the courthouse must wear masks and be
screened.  Any witnesses should remain outside the courtroom until called.**


**DONE** and **ORDERED** this the **14th** day of **June 2020.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**