IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| APRIL R. NAIL, *et al.*,<br>    Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION: 17-00195-KD-B |
| ROBERT M. SHIPP, *et al.*,<br>    Defendants. | )<br>)<br>) | |

**ORDER**

This matter is before the Court on the Interpleaders' motion for discharge and attorneys' fees (Doc. 313), the Interpleaders' Notice (Doc. 319), the Interpleaders' Supplement (Doc. 334), Plaintiff's opposition (Docs. 321, 335), and the Interpleaders' Reply (Doc. 336).

**I.    Background**

On April 3, 2020, Final Judgment issued against Defendants Robert M. Shipp, Regina E. Shipp, and Sportsman Fish House, LLC and in favor of Plaintiffs as follows:

> 1) A Jury verdict in the amount of **$24,651.28** for back wages ($7,287.05 in minimum wage damages and $17,364.23 in overtime wage damages) is awarded, and based on the parties' stipulation (Doc. 208), expense shifting damages are awarded in the amount of **$6,198.00** -- for a total award of **$30,849.28** against Defendants and in favor of Plaintiffs; and
>
> 2) Liquidated damages are awarded in the amount of **$30,849.28,** against Defendants and in favor of Plaintiffs; and
>
> 3) Attorneys' Fees are awarded in the amount of **$291,444.00,** against Defendants and in favor of Plaintiffs; and
>
> 4) Costs are awarded in the amount of **$7,050.00,** against Defendants and in favor of Plaintiffs.

(Doc. 222).  On May 28, 2020, Plaintiffs returned to this Court, seeking assistance with their unsuccessful efforts to collect on the judgment from the Defendants.  Since then, Plaintiffs' efforts included post-judgment discovery and two (2) motions to compel (which have been granted); at least eight (8) writs of

1

garnishment; a Rule 65 TRO motion and a June 22, 2020 hearing (with an order prohibiting Defendants, for 60 days, from transferring, assigning and/or selling any assets to any entity which Defendants Robert M. Shipp, Regina E. Shipp, or any family member, has an interest in, is a beneficiary of, is a member of, and/or controls in any manner -- which was extended until October 6, 2020 (Doc. 297)).  This includes Plaintiffs' filing of a Rule 69 Supplementary Complaint, through which they assert that they intend to unwind what they allege are fraudulent transfers executed by Defendants to others to avoid the judgment, including related to an entity named MRKS Florida Limited Partnership (MRKS FLP).  (Doc. 286).

On August 4, 2020, non-parties Playa, LLC f/k/a La Playa, LLC, C. Bennett Long, and Fisher's at Orange Beach Marina, LLC, filed a Motion to Intervene and Interplead. (Doc. 287).  It is Plaintiffs' Supplementary Complaint which formed the bases for the motion to intervene by these non-parties, to interplead, and to deposit funds into the Court. (Doc. 287).  Specifically, Plaintiffs' allege that a Promissory Note (which these non-parties executed) relating to the sale of the assets of Defendant Sportsman Fish House, LLC to Playa, LLC in October 2017 for $2 million, was assigned to MRKS FLP, prompting Playa, LLC to transfer over $1.3 million in payments "rightfully belonging to Defendants Sportsman to Defendant MRKS [F]LP since November 2017." (Doc. 286 at 10).  Plaintiffs explain that the Assignment "recites as consideration" the sum of $10.00 in cash transferred from MRKS FLP to the Defendants, such that the Defendants did not receive sufficient value for the transfer and the transfer of the Promissory Note from Sportsman to MRKS FLP in this manner "left Sportsman insolvent."  (Doc. 286 at 12 at ¶¶43-44). Plaintiffs add that following this Assignment, Fisher and the non-parties transferred $41,666.66/month to MRKS FLP "that truly belonged" to Defendants.  (Id. at ¶45).  Per Plaintiffs, the "actual intent of the assignment" was "to hinder, to delay, or to defraud Plaintiffs[.]"  (Doc. 286 at 13 at ¶48).

As the non-parties remain Payors under the Promissory Note and payments remain due, the non-party payors sought relief from the Court.  In support, the non-parties asserted:

- After executing the Asset Purchase Agreement, Defendants assigned the related Promissory Note to another entity, MRKS Florida Limited Partnership (MRKS FLP), prompting these non-parties to make the monthly payments due under the Promissory Note to MRKS FLP (versus the Defendants).

- In June 2020, the non-parties were served with writs of garnishment from the Court.

- The non-parties are not indebted to Defendants via the assignment of the Promissory Note to MRKS FLP, but they are purportedly indebted to MRKS FLP under same, with a current outstanding principal and interest totaling $83,333.32.

- In July 2020, Plaintiffs filed a Supplementary Complaint to unwind what they allege are fraudulent transfers of assets by Defendants under the *Alabama Fraudulent Transfers Act*, and the Defendant-MRKS FLP Assignment is one of those allegedly fraudulent transfers.

Given Plaintiffs' Supplementary Complaint and the non-parties' outstanding obligations under the Promissory Note to MRKS FLP, the non-parties stated that they were unsure as to who/which entity is rightfully entitled to receive the remaining payments ($83,333.32). These circumstances prompted the non-parties to move to intervene as a party, interplead (via interpleader complaint (Doc. 287-1)), and deposit funds (remaining payments) into the Court.

On August 20, 2020, the Court denied the motion as to intervention, but granted the motion to interplead and ordered the interpleaders to deposit the amounts owed under the Promissory Note. (Doc. 304). Also on this date, the Interpleaders filed a complaint. (Doc. 308). In accordance with the Court's order, on August 27, 2020 and September 10, 2020, Interpleaders deposited $41,666.67 with the Clerk of Court (Doc. 307, 311), for a total deposit of **$83,333.32.**

On September 10, 2020, Interpleaders moved for $6,300 in attorneys' fees based on having to be interpleaders. (Doc. 313). Also Plaintiffs moved for disbursement of the funds deposited, minus any amount to be held in reserve pending the Court's ruling on interpleaders' attorneys' fees request. (Doc. 312). On September 11, 2020, the parties filed a consent motion to disburse the funds, except for the attorneys' fees amount sought. (Doc. 312). (Doc. 316). On September 15, 2020, the Court granted the

3

motion and ordered the disbursement of **$86,882.60**[1] to Plaintiffs, via counsel, which mooted Plaintiffs' prior motion (Doc. 312). (Doc. 317). The Court subsequently ordered additional briefing regarding the interpleaders' motion for fees. (Doc. 322). Interpleaders now seek to be discharged and dismissed with prejudice, and for a 28 U.S.C. § 2361 injunction to issue, asserting that they are in full compliance with the Court's order and that they have satisfied their obligations. (Docs. 313, 334, 336). While Plaintiffs do not dispute interpleaders discharge/dismissal, they dispute their entitlement to attorneys' fees. (Doc. 335).

## II.     Attorneys' Fees

Interpleaders presently seek **$6,450** in attorneys' fees ($5,950 already incurred and $500 "anticipate[d]"), by attorney Paul T. Beckmann (Beckmann) with over 14 years of experience, for **23.8 hours** of work at the rate of **$250/hour** from July 29, 2020 through September 28, 2020. (Doc. 313; Doc. 334-1 (Supp. Aff. Beckmann)). Interpleaders and counsel assert the fees were reasonably incurred. (Id). Billing records have been submitted (though heavily redacted) in support. (Doc. 334-2). In response, Plaintiffs oppose the fees, overall, and/or in the amount requested as excessive. (Doc. 335).

### A.     Ability to Recover

"While there is not a rule requiring that the stakeholder receive an award for its attorney's fees, it is a common practice in equity depending on the circumstances of the case.....[however]...[c]ourts have determined that in certain circumstances attorney's fees are not warranted." Primerica Life Insurance Company v. Kennerly, 2013 WL 12091623, *1 (S.D. Fla. Apr. 7, 2013). As explained in Transamerica Premier Life Ins. Co. v. Covert, 2020 WL 9678691, *5-6 (N.D. Fla. Jan. 6, 2020):

> ... Federal law does not provide for an award of attorney's fees or costs in a statutory interpleader action.... instead .... the Eleventh Circuit's recognition of a district court's general authority to award attorney's fees and costs against the interpleader fund to a

---

1 From the total sum in the Court registry -- **$93,182.60.** In addition to the $83,333.34 deposited by the interpleaders, garnishee The First, A National Banking Association had previously deposited $9,849.26 on July 29, 2020. (Docs. 278, 304, 306, 307, 310, 311, 315).

4

> plaintiff who initiates an interpleader action as a mere disinterested stakeholder. *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986).
>
> .... Eleventh Circuit has held that attorney's fees are not warranted "when a stakeholder's interpleader claim arises out of the normal course of business." *In re Mandalay Shores*, 21 F.3d at 383. As the court explained there:
>
>> The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds—disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.
>
> *Id.* District courts in the Eleventh Circuit have routinely denied insurance companies' requests for fees and costs in interpleader actions where the companies fail to demonstrate that the action was not part of its regular course of business or is otherwise extraordinary. *See, e.g., Life Ins. Co. of N. Am. v. Williams*, No. 1:15-cv-62-ELR, 2015 WL 10961833, at *3 (N.D. Ga. May 22, 2015); *Chesapeake Life Ins. Co. v. Tweedy*, No. 5:13-cv-372 (MTT), 2014 WL 12703723, at *1 (M.D. Ga. Jan. 27, 2014); *N. Am. Co. for Life and Health Ins. v. Dye*, No. 3:11-cv-1234-J-34MCR, 2012 WL 4760907 at **2–3 (M.D. Fla. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 4760886, at *1 (Oct. 5, 2012); *Midland Nat'l Life Ins. Co. v. Fredricksen*, No. 3:09-cv-198-MCR-MD, 2009 WL 10674046, at *3 (N.D. Fla. Dec. 24, 2009); *Am. Gen. Life Ins. Co. v. Soule*, No. 8:08-cv-1357-T-23EAJ, 2008 WL 4790654, at *3 (M.D. Fla. Oct. 27, 2008); *Life Inv'rs Co. of Am. v. Childs*, 209 F. Supp. 2d 1255, 1256–57 (M.D. Ala. 2002).
>
> ... The Court should not deplete the limited interpleader fund available here without such a showing....

"Whether a court should allow a party who commences an interpleader action to recover its attorney's fees and costs of the action is a matter committed to judicial discretion and is rarely awarded as a matter of course." *State Auto Property & Casualty Ins. Co. v. Burns Enterp., Inc.,* 2016 WL 1733479, *3 (W.D. Ky. Apr. 29, 2016).

"In determining the appropriateness of an award of attorney's fees from the interplead funds courts have taken into account the capacity of the stakeholder." *Washington National Ins. Co. v. Bennington,* 2016 WL 8453416, *2 (D. Wyo. Jan. 6, 2016). "In the usual case the fee will be relatively modest,

inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a b[o]nd, service on the claimants, and the preparation of an order discharging the stakeholder." 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1719 (3d ed.1998). This is because an interpleader action "does not usually involve any great amount of skill, labor or responsibility," such that "the amount allowed for fees should be modest." *Hunter v. Federal Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir.1940). Moreover, "[t]he broad rule governing an award of attorney's fees in an interpleader action is reasonableness." *Protective Life Ins. Co. v.. Kridner,* 2013 WL 1249205, *4 (D. Minn. Mar. 27, 2013). For reasonableness, courts consider: 1) whether the case is simple/complex; 2) whether the stakeholder performed unique services; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefitted the stakeholder; and 5) whether the claimants improperly protracted the proceedings. Id.; Charles Alan Wright et al., *Federal Practice and Procedure* § 1719 (3d ed.1998)).  The stakeholder seeking fees has the burden of proving reasonableness. *Kridner,* 2013 WL 1249205, at *5. "[A]ny 'uncertainties in a fee application due to nonspecific entries are resolved against the applicant.'" Id.

In sum, Campbell v. North American Co. for Life and Health Ins., 2007 WL 2209249, *4-6 (M.D. Fla. Jul. 30, 2007):

> ....The determination of whether to award attorneys' fees and costs lies within the sole discretion of the court. *Id.; see also Mandalay Shores,* 21 F.3d 380 at 382-83; *Childs,* 209 F.Supp.2d 1255, 1256; 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1719 (3d ed.2001)) (citations omitted). As a general proposition, attorneys' fees and costs may be awarded to an innocent, disinterested stakeholder who brings an interpleader action. *Prudential Ins. Co. of America v. Boyd,* 781 F.2d 1494, 1497 (11th Cir.1986). If a disinterested stakeholder is permitted to recover attorneys' fees and costs, the recovery is generally awarded from the stake itself. *Childs,* 209 F.Supp.2d 1255 at 1256; *see also Boyd,* 781 F.2d 1494 at 1498.

> In *Mandalay Shores,* the Eleventh Circuit stated at least three reasons justify an award attorneys' fees in many interpleader actions:

>> First, an interpleader action often yields a cost-efficient resolution of a dispute in a single forum, rather than multiplicitous, piecemeal litigation. Second, the stakeholder in the asset often comes by the asset innocently and in no way provokes

6

> the dispute among the claimants. Third, fees for the stakeholder typically are quite minor and therefore do not greatly diminish the value of the asset.
>
> *Mandalay Shores,* 21 F.3d 380 at 383.

\*\*\*

Where a court does find an interpleader to be a disinterested, innocent stakeholder, any fee award should be made "consistent with equitable principles." *Harris Corp. v. Dunn,* No. 6:05-cv-1388-ORL-19DAB, 2006 WL 1275062, at \*6 (M.D.Fla. May 5, 2006). In such a situation, "the usual practice is to tax the costs and fees against the interpleader fund." *Boyd,* 781 F.2d 1494 at 1498. Furthermore, "the fees for the stakeholder are typically quite minor and therefore do not greatly diminish the value of the asset." *Mandalay Shores,* 21 F.3d 380 at 383; *see also Childs,* 209 F.Supp.2d 1255 at 1256 (finding fees over two percent of the total stake were not "quite minor."); *Primerica Life Ins. Co. v. Walden,* 170 F.Supp.2d 1195, 1199-1200 (S.D.Ala.2001) (finding less than one percent of total stake to be reasonable.); and *Unum Life In. Co. of Am. v. Kaleo,* Case No. 6:05CV544ORL-22DAB, 2006 WL 1517257, at \*3 (M.D.Fla. May 24, 2006) (finding an award of $6,698 from a $40,000 fund would "greatly diminish the value of the asset.").

The interpleaders must establish the reasonableness of such fees/costs (*i.e.*, to what extent such would diminish the interplead funds). See, e.g., Primerica, 2013 WL 12091623 at \*1 ("In an interpleader action where the disputed amount is relatively small, a significant award of costs and attorney's fees 'would seem to defeat the purpose of an interpleader action by essentially diminishing a fund to finance litigation calculated to preserve that very fund for the proper recipient.' *Mfrs. Life Ins. Co. v. Johnson*, 385 F. Supp. 852, 854-55 (E.D. Va. 1974)[]"). Moreover, the interpleader must remain a disinterested stakeholder to recover attorneys' fees.

In support of their current motion, the interpleaders submit the Affidavits of Interpleader Bennet Long (Doc. 313-1 (Aff. Long)) and billing attorney Paul. T. Beckmann (Doc. 313-2 (Aff. Beckman), Doc. 334-1 (Supp. Aff. Beckmann)) and further assert:

> ...Playa, LLC is a single purpose limited liability company that owns and operates a restaurant in Orange Beach, Alabama....C. Bennett Long is an attorney practicing in Mobile, Alabama....Fisher's at Orange Beach Marina, LLC is a single purpose limited liability company that owns and operates a restaurant in Orange Beach, Alabama....Interpleaders are not engaged in the business of banking or insurance... The funds paid into Court by Interpleaders were owed pursuant to a promissory note executed as part of an asset purchase agreement...This interpleader action, necessitated by a dispute

> as to the validity of the assignment of the subject promissory note, did not arise out of the normal course of Interpleaders' business....
>
> ...This interpleader action has resulted in a cost-efficient resolution of the dispute over the funds deposited. Interpleaders are innocent stakeholders who in no way provoked the dispute between the interpleader claimants and actually tried to resolve the dispute without court intervention. The fees incurred...are reasonable, quite minor, and do not greatly diminish the $83,333.32 at issue.. It is not within the normal course of the business of a restaurant or attorney to interplead funds owed to a creditor, such that the exception to the general rule that allows for the recovery of the innocent stakeholder's attorney's fees in inapplicable....

(Doc. 313 at 3-4).

First, it appears that the interpleader litigation is fairly deemed outside of the interpleaders' normal course of business (an attorney and owners/operators of restaurants). However, the interpleaders' status does not exist in a vacuum. And the unique circumstances before the Court merit further scrutiny.

Of note, the interpleaders attained their status by asserting to the Court they are innocent and disinterested stakeholders -- *i.e.*, that they had nothing to do with Defendants' allegedly fraudulent transfer/assignment of the Promissory Note connected to the Asset Purchase Agreement to MRKS Florida Limited Partnership (MRKS FLP). The interpleaders asserted that they became obligated contractually to pay MRKS merely as a result of Defendants' transfer/assignment of the Promissory Note, but did not know to whom the payments were properly due and so sought to deposit the remaining payments with the Court to resolve same. The resulting impression given to the Court by the interpleaders was thus one of complete non-involvement. In other words, that the interpleaders had no connection to and/or involvement with the Defendants and/or the subject transfer/assignment of the Note.

However, the record now reveals that interpleaders were aware of the transfer/assignment at issue and that they specifically contracted with Defendants to protect themselves from any consequences from it -- they took such action with knowledge of this litigation. While the Court cannot agree with Plaintiffs that "Interpleaders' knowledge of the pending lawsuit and anticipation of possible collection efforts

8

demonstrate their knowing complicity to fraudulent transfer....[,]" such knowledge and anticipation demonstrates that they arrived at their interpleader status *wittingly*, suggesting they are not, in fact, disinterested. Further muddying their status is the fact that the interpleaders currently seek to be paid fees from the funds they paid into the Court, while they can pursue recovery under the contract executed with Defendants specifically for such a circumstance.

Notably, the agreement the interpleaders executed with Defendants references <u>this</u> litigation and contracts for Defendants' obligation to indemnify interpleaders for "all costs, obligations, liabilities, claims or judgments incurred as a result of" same:

> Seller shall appear, defend, indemnify and hold Buyer and its officers, members, managers, directors, employees, attorneys and representatives, and their respective successors and assigns (collectively, the "Buyer Indemnified Parties") harmless from and against any and all costs, obligations, or liabilities of or claims incurred by or asserted against the Buyer Indemnified Parties (**<u>including reasonable attorneys' ..... fees and expenses</u>**) pertaining to the Assets or business of the Restaurant **which have been incurred or accrued or otherwise relate to the period prior to and including the Closing, and all other Excluded Liabilities**. Without limiting the generality of the next preceding sentence, **<u>Seller shall indemnify Buyer for all costs, obligations, liabilities, claims or judgments incurred as a result of the FLSA Case</u>.** The specific inclusion of the reference to the FLSA Case shall in no way constitute an admission of liability by Seller with respect to the FLSA Case and this indemnification shall not extend to any liability with respect thereto caused by any act or omission of the Buyer subsequent to Closing. **<u>An indemnification claim can be made under this paragraph only after all such claims aggregate $5,000 or more, but once they exceed $5,000 in the aggregate, the indemnification will include the $5,000 threshold amount.</u>**

And, as noted *supra*, the contract addresses attorneys' fees and indemnification if/when $5,000 threshold is reached or exceeded. Given interpleaders requested sum in excess of $5,000, the contract would appear to be triggered such that interpleaders could seek recovery from the Defendants, as contracted.

Based on the foregoing circumstances, per Plaintiffs, no fees should be awarded:

> Interpleaders ask this Court [to] ignore the indemnification provision of the Agreement that explicitly obligates Judgment Debtors to pay attorneys' fees (to the extent they exceed $5,000) and allow them to manufacture a need for fees in excess of $5,000. Interpleaders ask this Court to place their contractual claim against Judgment Debtors ahead of the

> judgment this Court awarded to victims of wage theft who have been diligently attempting to collect for 6 months, incurring significant legal fees.

(Doc. 335 at 3-4). Plaintiffs contend that the interpleaders are not innocent stakeholders (i.e., disinterested non-parties) as they represent:

> Interpleaders knew about this lawsuit before entering the Agreement and Promissory Note with Judgment Debtors and agreeing to Judgment Debtors' proposed assignment to MRKS LP....And Interpleaders knowingly agreed to Judgment Debtors' assignment of $1.5 million in payments to MRKS LP, even though MRKS LP provided no consideration to Judgment Debtors in exchange for the seven-figure assignment. Additionally, Interpleaders accepted indemnification from Judgment Debtors as their path of relief for "all costs, obligations, liabilities, claims or judgments incurred as a result of" this litigation. ....
>
> Interpleaders, an attorney among them, with the benefit of skilled and experienced legal counsel, anticipated that Plaintiffs' pending lawsuit would likely result in some liability, as evidenced by their inclusion of specific indemnification language. Interpleaders nevertheless agreed to the assignment and assisted Judgment Debtors' fraudulent transfer by continuing to make payments to MRKS LP for three years. Interpleaders accordingly are not innocent stakeholders in this matter.
>
> Interpleaders' knowledge of the pending lawsuit and anticipation of possible collection efforts demonstrate their knowing complicity to fraudulent transfer....Plaintiffs described in detail the fraudulent scheme of Interpleaders' partner, John T. Fisher, who Plaintiffs named as a defendant in the Supplementary Complaint and Interpleaders' roles in it. [See Doc. 286. ¶¶ 27, 33–50.] Interpleaders were not named in the Complaint only because Interpleaders specifically requested that Plaintiffs not do so while promising to remit all remaining payments under the Agreement and Promissory Note to this Court's registry. [ ] ....Plaintiffs would not have agreed to forgo suing Interpleaders if they had known that Interpleaders would then seek to reduce the amount of money available to satisfy the outstanding judgment in this matter. Interpleaders' entire course of conduct appears to be designed to manufacture a mechanism to recoup excessive attorneys' fees at Plaintiffs' expense.
>
> Interpleaders are not innocent stakeholders entitled to recover attorneys' fees. They diverted $1.5 million from Judgment Debtors to MRKS LP while being aware that they risked being drawn into Plaintiffs' post-judgment enforcement efforts, [and] willingly undertook up to $5,000 of costs and attorneys' fees.....

(Doc. 335 at 5-6 (footnote omitted)).

10

In response, the interpleaders argue that the contract is between them and Defendants, "does not afford Plaintiffs any rights[,]" and that they are entitled to pursue multiple avenues of recovery for fees. (Doc. 336 at 2). Per interpleaders:

> It is axiomatic that the existence of multiple avenues of recovery against multiple parties does not preclude any particular claim against any particular party, so long as there is no double recovery. A claimant is free to choose its avenue of recovery. Yet, in this instance, Plaintiff is trying to use the indemnity provision in an agreement between Interpleaders and Defendants to preclude Interpleaders' claim against the interpleader fund. Interpleaders have a valid claim for attorney's fees and costs against the interpleader fund. They also have a claim against Defendants
> for the same fees and costs pursuant to the Asset Purchase Agreement. Interpleaders are not seeking double recovery, and Plaintiffs are not entitled to reap the benefit of the indemnification agreement between Interpleaders and Defendants.

(Doc. 336 at 2).

The Court finds Plaintiffs' contentions partially persuasive. The generally purpose behind awarding attorneys' fees to indemnitors is rooted in their innocent and disinterested stakeholder status. As illustration, such status is for indemnitors "who unwittingly come into possession of a disputed asset[]" but cannot "plan for interpleader" as part of handling same. Here, however, interpleaders did not unwittingly come into possession of a disputed asset. Rather, they wittingly came into possession of the asset. And in so doing, planned to handle same -- and protect themselves from liability -- by entering into a contract with Defendants through which their attorneys' fees would be paid by Defendants if/when incurred in relation to disputes surrounding that asset. This action undermines their disinterested stakeholder status. Under these unique circumstances, and in the Court's discretion the motion for attorneys' fees is **DENIED.**

## II.     Discharge & Injunctive Relief

Interpleaders seek to be discharged, dismissed with prejudice, and for an injunction to issue enjoining Interpleader Claimants from further action per 28 U.S.C. § 2361. (Docs. 313, 334). Typically, once an interpleader deposits the funds with the court registry, "all legal obligations to the asset's claimants

11

are satisfied" and the district court enters a "discharge judgment on behalf of the stakeholder[.]" *In re Mandalay Shores*, 21 F.3d at 383. Additionally, Section 2361 affords the district court with the discretion to permanently enjoin claimants from instituting or prosecuting any further proceedings against the stakeholder concerning the property involved in an interpleader action. 28 U.S.C. § 2361; McBride v. McMillian, 679 Fed. Appx. 869, 871-872 (11th Cir. 2017).

The interpleaders have deposited the *entirety* of the relevant sum into the Court, and thus are due to be discharged. See, e.g., Prudential Ins. Co. of America v. Brown, 2019 WL 3976513, *4 (S.D. Ala. Aug. 22, 2019) (discussing statutory interpleader discharge post-deposit of funds into the Court's registry). Accordingly, the interpleaders' motion to discharge is **GRANTED** and they are **DISMISSED** from this case. However, the motion is **DENIED** as to the request for entry of Section 2361 Injunction because the interpleaders have not established entitlement to, and/or the necessity for, such in this case.

**DONE** and **ORDERED** this the **14th** day of **December 2020.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**